WRIGHT, DRYDEN & CO. v. FLINN.

1. Promissory note: LATENT DEFENSES : NEGLIGENCE. The fact that a person was induced to sign his name as surety to a negotiable note, without reading it, under the representations of the maker that it was payable to a bank, when it was, in fact, payable to an individual, constitutes no sufficient defense to the note in an action thereon by the payee, when it does not appear that he had any knowlege of the alleged fraud.

2. —— Where one of two innocent parties must suffer, that one must bear the injury whose carelessness or acts have been instrumental in producing it.

*Appeal from Polk Circuit Court.*

WEDNESDAY, FEBRUARY 21.

DEFENDANT, Daniel M. Flinn, commenced an action to enjoin the collection of a promissory note payable to and held by plaintiffs, Wright, Dryden & Co., executed by defendant and one F. S. Graham. An injunction allowed in the case was dissolved. In a cross-bill filed by Wright, Dryden & Co., they claim to recover against Flinn the amount of the note. In this form the action was tried and the issues involving Flinn's liability upon the note were determined. The title of the cause seems to have been changed in this court by the mutual assent and concurrence of the parties, the defendant here having been plaintiff below. A judgment was rendered against Flinn for the amount due upon the note. He appeals to this court. The other facts necessary to an understanding of the case appear in the opinion.

*Barcroft, Gatch & Hammond* for the appellant.

*Withrow & Wright* for the appellee.

BECK, Ch. J. — The facts of this case are substantially as follows: The plaintiffs indorsed certain drafts, drawn by one F. S. Graham, a banker, which were discounted by the State National Bank of Des Moines. The drafts were not paid by the drawers, and, after due notice of non-payment, the plaintiffs paid and took up the paper, the same having been returned to the State National Bank. The plaintiffs thereupon presented the drafts to Graham and demanded payment thereof. He represented that, by reason of temporary embarrassment, he was unable to meet the drafts, but that, if time should be given him, he could and would pay them. Plaintiffs agreed to extend the time required,

on condition that Graham should take up the paper and give his note with security, payable at the State National Bank at Des Moines. It was agreed that defendant would be accepted by plaintiffs as sufficient security upon the note. The note in suit, under this agreement, was executed and delivered to plaintiff and the drafts taken up. Defendant executed the note as security at the solicitation of Graham, who represented to him that it was for the purpose of securing a note held by the State National Bank of Des Moines against him. Defendant attempted to read the note but did not read all of it. It was read to him by Graham as being payable to the State National Bank, and was executed by defendant under the belief that it was so payable. Defendant at the time supposed Graham to be solvent and was induced to sign the note by Graham's representations of his ability to pay his debts and to meet the note in question, and by the fact of its being payable at the bank above mentioned. At the time Graham was, in fact, insolvent and soon after failed. His insolvency, however, was not known to plaintiffs or defendants. Plaintiffs made no representations, whatever, to defendant in regard to the transaction or Graham's condition; indeed there was never any communication between the parties upon these subjects. Neither did plaintiffs have any knowledge of the representations made by Graham in order to procure defendant's signature to the note, nor were they informed that Graham believed he was executing a note payable to the State National Bank.

I. Counsel for defendant claim that the note cannot be enforced against defendant, because he did not assent to the contract embodied therein; that the contract to which defendant did assent was a note payable to the State National Bank. It is argued, that as no such contract was signed by defendant, but another and a different one, he is not bound thereby. It may be admitted that defendant

signed the note, supposing it to be payable to the bank, but it by no means follows that the law will not regard it as binding upon him. He suffered Graham to draw up and read an instrument for him, and, after its execution, to retain it in his possession and deliver it to the payee. If, in these acts, Graham deceived him, falsely reading the instrument and delivering it to a party not intended by defendant to receive it, it is very plain that defendant ought rather to suffer than plaintiffs, if in fact he is injured by the transaction. Defendant, by his carelessness in not reading the instrument, enabled Graham to obtain a note of a different character than he intended to execute. Proper care would have protected him from this fraud. Plaintiff had no means of detecting the fraud of Graham, and, in fact, there was nothing in the transaction calculated to arouse his suspicions that it was not entirely fair. For this note, presented to him without any cause of suspicion or grounds to doubt that it was binding upon defendant, he surrendered the drafts issued by Graham and released his right to proceed at once against him for his claim. Plaintiff is without fault; defendant was negligent. Under these circumstances, the hardship, if any, must fall upon the defendant, the party in fault. He cannot now be heard to deny that the instrument which, through his carelessness, was given to Graham, is not binding upon him in the hands of an innocent party. *Douglass* v. *Mutting*, 29 Iowa, 498; *Gage* v. *Sharp*, 24 id. 15.

It is not made to appear that defendant did, in fact, suffer prejudice by the note being executed to plaintiff instead of the bank. The contract of defendant would be no less burdensome if held by the bank; the note, in its hands, would subject him to no different liability than it does in the hands of plaintiff. He is bound by the note to pay a specified sum of money. It would not have been diminished, nor the condition of the note in any degree changed, had the bank been named therein as the payee.

It has been held that a note will be considered valid against securities when made payable to a particular person for the purpose of raising money, with the expectation that it will be discounted by the payee, even though taken and discounted by another. *Bank of Middlebury* v. *Bingham*, 33 Vt. 621. The rule is based upon the considerations above stated and the further cogent reason, that, even though regard was had by the security as to the person to whom the note is made payable, his expectation of advantages from that source could be wholly defeated by a transfer by the payee to another.

II. Counsel insists that the note cannot be enforced against defendant because it was procured from him by fraud, and was not taken by plaintiffs in the usual course of business without knowledge of the fraud or for a full and valuable consideration. In the first place, admitting fully the claim of defendant that he was deceived by Graham and induced by his misrepresentations to execute the note, there is an utter lack of evidence to connect plaintiffs with the fraud. On the contrary, the evidence shows that they knew nothing whatever of the means resorted to by Graham to procure the signature of defendant to the paper. It is not pretended that plaintiffs can be held responsible for Graham's fraud without having, to some extent, partaken in it, or having some knowledge of it. In the second place the note was taken under no circumstances which would tend to arouse the suspicions of unfair dealing in the mind of a prudent man. It was taken "in the usual course of business," as the phrase must be understood when applied to this transaction. Transactions of this character are not unusual among business men. Creditors often extend indulgence to debtors upon receiving security of this kind. The "course of business" in such cases was not departed from by the plaintiffs in taking the note in question. There can be no question but that it is supported upon a sufficient consideration.

The circumstances that Graham was a banker. and was unable to meet his obligations; that he had no credit at the First National Bank, or, at least, no sufficient.credit to procure money or an extension upon his paper without security; that at the time of the transaction he was insolvent, and other like matters are urged as establishing fraud on the part of plaintiffs. All of these facts that were known to plaintiffs were quite as well understood by defendant. He knew that Graham was a banker, that he could not meet his paper, and that to extend it security was demanded of him. It does not appear that plaintiffs were informed of Graham's insolvency.

Upon a careful consideration of the evidence we fail to discover any fraud on the part of plaintiffs, or that, by the exercise of superior knowledge, they took undue advantage of defendant. Each party was equally ignorant of the main fact which would, if known to defendant, have induced him to withhold his signature upon the note, namely, Graham's insolvency or inability to pay the paper at maturity. Under this state of facts the case stands in the same attitude of all other security cases. The hardship suffered by defendant is the result of his carelessness in lending his name to one, concerning whose solvency he was not informed, and is often borne by those who enter into such contracts. He cannot be relieved without injustice to innocent parties. He must, therefore, suffer the consequences resulting from his hasty and ill-advised act.

Affirmed.