| 82 | 601 |
|----|-----|
| 91 | 410 |
| 82 | 601 |
| 92 | 641 |
| 82 | 601 |
| 103 | 323 |
| 82 | 601 |
| 122 | 345 |
| 82 | 601 |
| 128 | 132 |
| 82 | 601 |
| 136 | 577 |

GEORGE W. CARNES et al., Appellants, v. W. O. MITCHELL, Appellee.

1. **Jurisdiction**: ORIGINAL NOTICE: SERVICE BY PUBLICATION: AFFIDAVIT. The affidavit required by section 2618 of the Code as preliminary to service of original notice by publication must allege that personal service of such notice cannot be made upon the defendants in this state. An affidavit, alleging that "none of the defendants are residents of the state of Iowa," will not give jurisdiction.

2. **Title to Real Estate**: LACHES: ESTOPPEL. A mother, upon the death of her husband, removed from this state with her two children, of the age of twelve and five years, respectively, to the state of Oregon, where she shortly afterwards died, and her two children were left with strangers, with whom they continued to reside until after their majority. The children knew that their father was the owner of lands in this state when he died, and that they had relatives residing near it, but they had no information as to its condition, nor as to claims made to it by others, and made no effort to ascertain the condition of their title until shortly before the commencement of this suit to quiet their title thereto. *Held*, that plaintiffs were not estopped by their conduct from asserting their title to the land as against one claiming the same under a conveyance from the grantee of the plaintiffs' sister, whose assertion of ownership was based upon the supposition that the plaintiffs were dead, and that she was the sole heir.

3. ———: INCUMBRANCES: ACCOUNTING. The sister of the plaintiffs having mortgaged the land in controversy to procure funds to protect her supposed title thereto, *held.* that the plaintiffs not having been benefited by the use of said funds neither they nor the land should be charged therewith. ,

*Appeal from Adams District Court.*—HON. JOHN W. HARVEY, Judge.

SATURDAY, MAY 23, 1891.

ACTION to quiet title to real estate, and for an accounting of rents and profits. After a hearing upon the merits, the court found that there was no equity in the petition, and adjudged that it be dismissed. The plaintiffs appeal.—*Reversed.*

*Dale & Brown* and *Thos. L. Maxwell*, for appellants.

*W. O. Mitchell* and *H. M. Towner*, for appellee.

ROBINSON, J.—In the early part of the year 1864, Allen Carnes owned the east half of the southeast quarter, and the northwest quarter of the northeast quarter of section 24, township 73, north, of range 34, west, in Adams county. He had a wife, named Rebecca, and four children. Of these, Mary had attained her majority, and was married to a man named Young. Elizabeth was about seventeen years of age, Rachel was twelve, and George W. was five. During or about the month of February, 1864, Carnes killed a man named Prather, and was himself soon afterwards hanged by a mob in Adair county. In March, 1864, after the killing of Prather, Carnes conveyed the land to one Parish, it is alleged, as trustee, and after his death in April, 1864, Parish conveyed it to the widow and the three minor children. Soon after the death of Allen Carnes his family, with David Carnes, the father of Allen, and others, left Adams county for Oregon by the overland route. At Council Bluffs the mother caused a letter to be written to John Barnett, which resulted in his being appointed guardian of the three minor children. After qualifying as guardian, he took charge of the land, leased it, and collected rents. The family journeyed westward from Council Bluffs. Soon after leaving Omaha, Elizabeth was married to a man named Burch. In August, 1864,

in Idaho, the mother died, and Rachel and George were
left with a family named Miller, in Baker county,
Oregon. David Carnes, the grandfather, went on to
Harrisburg, Oregon, where he has since resided. Eliza-
beth remained in Oregon, not far from the Millers, until
the next year, when she left, going to Portland and San
Francisco; thence by way of Panama, to New York; and
thence to Macon, Georgia, where she has since resided.
After leaving Oregon, she remarried, and her name is
now Davis. The Millers moved from Oregon to Utah,
taking Rachel and George with them. Miller died in
the year 1873. Rachel lived with the Millers until she
married a man named Shangle, in the year 1871, and
since that time she has lived in Utah and Idaho. George
lived with Miller until the latter's death, and afterwards
with Mrs. Miller until the year 1876. He has resided in
Utah since he went there with the Millers.

There was no communication of any kind between
Elizabeth and Rachel and George after they separated
in Oregon, until after this action was commenced, in
the year 1888. The sister, Mrs. Young, in December,
1865, conveyed her interest as heir in the land in contro-
versy, and moved to Kansas, where she died. In Jan-
uary, 1877, Rebecca J. Moore, a grantee of the interest
conveyed by Mrs. Young, obtained a decree in the
circuit court of Adams county fixing the interest thus
conveyed as an undivided one-fourth of the land in
controversy. Barnett, as guardian of Elizabeth, Rachel
and George, rented all the land from the year 1864 until
the decree mentioned was rendered, and after that time
until the year 1883 he rented three-fourths of it. He
made reports, as guardian, from time to time, until
December, 1886, when his final report was made. It
appears that he had paid Mrs. Davis, at different times,
sums of money realized by him as guardian, but that he
knew nothing of Rachel and George, and supposed
them to be dead. In July, 1883, Mrs. Davis visited
Adams county, and, acting upon the belief that Rachel
and George were dead, and that she was their sole heir,

procured the appointment of herself as administratrix of their estates, and in December, 1886, filed her final report. The final reports of the guardian and administratrix showed full settlement, and a delivery to Mrs. Davis of all money and property which had been derived from the land. The interest in the land acquired by Rebecca J. Moore was conveyed to R. A. Moore, and in the year 1883 he commenced an action against Mrs. Davis and Barnett, in which he claimed that Rachel and George were dead ; that Mrs. Young, as heir, had inherited an undivided one-fourth of the land from them ; that the conveyance from Mrs. Young had the effect to transfer the title to an undivided one-half of the land to her grantee ; and that said R. A. Moore, as grantee of that title, was the owner of an undivided one-half of the land ; but on final hearing in March, 1884, his petition was dismissed. It also appears that in the year 1883 Moore visited Mrs. Davis in Macon, and attempted to purchase her interest in the land ; that she at one time said she would sell it for the price offered, but afterwards refused to do so ; that Moore subsequently caused her to be served with notice in an action which he commenced to enforce a specific performance, and that she employed an attorney to protect her interests. What was done in that action does not appear, but it is not claimed that Moore accomplished anything by it.

In August, 1884, the interest acquired by Rebecca J. Moore, and afterwards by R. A. Moore, was conveyed to Mrs. Davis. At about the same time Mrs. Davis executed a mortgage on the land to secure a loan for six hundred dollars which is due and unpaid. In February, 1886, Mrs. Davis executed a conveyance for all the land to one Daley, and he made a similar conveyance to W. O. Mitchell, the defendant. Mitchell then commenced an action against " G. W. Carnes, Rachel Carnes and the unknown heirs of George W. and Rachel Carnes," to quiet his title to the land. The original notice was not served personally, but was published. There was no

appearance for the defendants, and on the second day of April, 1886, a decree was rendered in favor of Mitchell, as prayed.   More than two years after that decree was rendered, George W. Carnes and Rachel Shangle commenced this action, in which each claims to be the owner of an undivided one-fourth of the land in controversy. They attack the decree in favor of Mitchell on the ground that it was rendered without jurisdiction, and on other grounds, which we need not notice.   The defendant denies that the plaintiffs are the children of Allen and Rebecca Carnes.   He claims that the alleged title of the plaintiffs is barred by the statute of limitations, and that the plaintiffs are estopped by their laches from obtaining relief.   The defendant also claims that the mortgage executed by Mrs. Davis was given to secure money which was expended in defending the title to the land, and that the amount so expended has inured to the benefit of the plaintiffs.   The court found that the plaintiffs were not entitled to any relief, and rendered judgment against them for costs.   The title of the defendant to an undivided one-half of the land is not questioned.   By agreement of parties, the accounting for rents, profits, taxes and improvements was deferred to a future time.

I.   The body of the affidavit filed in the case of Mitchell against Carnes and others, for the purpose of authorizing the service of the original notice by publication, is as follows :

**1. JURISDICTION:** original notice: service by publication: affidavit.

"I, W. O. Mitchell, on oath, say, I am the plaintiff in the above-entitled action ; that none of said defendants above named are residents of the state of Iowa."

The appellants contend that this affidavit was insufficient ; that the court had no jurisdiction to enter default and judgment against them ; and that the judgment rendered was, therefore, void.   Section 2618 of the Code provides that " service may be made by publication, when an affidavit is filed that personal service cannot be made on the defendant within this state, in either of the following cases :   * * * *Sixth.*   In actions which relate to, or the subject of which is, real or personal

property in this state, when any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a non-resident of this state or a foreign corporation." The action of Mitchell to quiet title was within the provision of the subdivision quoted, and the court could acquire jurisdiction to give the relief demanded only by a strict compliance with the requirements of the statute. *Bardsley v. Hines*, 33 Iowa, 159; *Bradley v. Jamison*, 46 Iowa, 70; *Abell v. Cross*, 17 Iowa, 174; *Tunis v. Withrow*, 10 Iowa, 307. The cases cited did not arise under the statute now in question, but the principle involved in them and this case is the same. In *Taylor v. Ormsby*, 66 Iowa, 110, this court held that, in order to authorize the service of an original notice by publication on a non-resident defendant in an action to quiet title, it was not necessary to state the fact of non-residence in the affidavit for publication; and the reason given was that the law did not require such a statement; that an affidavit which stated that personal service of the original notice could not be made upon the defendant within the state of Iowa was in exact accord with the statute, and sufficient; that the non-residence of the defendant was a jurisdictional fact, which might be proven as any other material fact in the case. It is true that in *Sweeley v. Van Steenburg*, 69 Iowa, 697, it was said that in such a case two conditions must exist to give the court jurisdiction to enter judgment, *i. e.*, the action must relate to some of the interests enumerated in subdivision 6, and the defendant must be a non-resident of the state or a foreign corporation. As no other condition was named, it is claimed that no other is necessary. But in the cases under consideration in that opinion affidavits which showed that personal service of the original notices could not be made on the defendants therein named within this state had been filed, and the necessity of affidavits to that effect was not questioned in the case. It was not said, nor did the court intend to say, that such affidavits were

unnecessary. The statute authorizes service by publication, in cases like that in controversy, only when an affidavit stating that personal service cannot be made on defendant within this state is filed, and a publication made without the filing of such an affidavit is insufficient to give the court jurisdiction. *Chase v. Kaynor,* 78 Iowa, 450. Our conclusion is not in conflict with anything said in *Sweeley v. Van Steenburg.* To give the opinion in that case the effect contended for by the appellee would be to hold that an affidavit as to any fact was unnecessary. The case of *Byrne v. Roberts,* 31 Iowa, 319, on which the appellee also relies, was decided under chapter 240 of the Acts of the Sixth General Assembly, and this court held, not that it was unnecessary to show that the defendant could not be found within the state, but that under the statute specified it might be shown in part by the return of the sheriff. So far as that case was made to depend upon the return of the sheriff, it is not applicable to the statute under consideration in this case. We conclude that the affidavit in question was insufficient, and that the decree rendered in favor of the defendant is void for want of jurisdiction. The recital of due service in the decree cannot, in this proceeding, defeat an inquiry as to the actual fact and the granting of appropriate relief.

II. The appellee insists that the appellants, by their conduct, have forfeited all right to the land, and

2. TITLE to real estate: laches: estoppel. that they should be estopped to assert any. It is clear that the appellants have not shown much diligence in protecting their interests. They knew when they attained their majority that their father had left land in Iowa, and that they were probably interested in it. They also knew that they had relatives who were living near the land. Notwithstanding these facts, they made no effort to find those relatives, nor to ascertain the condition of the title to their land, until the year 1888. But they were children when they were taken from Iowa, and could not, in the nature of things, have formed enduring attachments for their relatives, nor have comprehended their interests in the land.

When they grew up they were told something of the land, but it is evident they had no information as to its condition, and knew nothing of the claims made by others. In view of their youth when they went to Oregon, and their distance from and want of knowledge in regard to the land, it is not strange that they failed to use diligence to ascertain their interests. On the other hand, they did nothing to mislead the defendant and his grantors. The defendant knew when he purchased the land that their death had not been proven. The fact that he at once commenced an action against them and their heirs to quiet his title is evidence that he knew he might not have acquired a perfect title. The reports of Barnett as guardian showed that he was holding the rents and profits of the property for the benefit of his wards, including the plaintiffs, and there is nothing in the case from which a possession adverse to the plaintiffs prior to July, 1883, can be presumed. In our opinion, nothing has been shown which should operate to estop the appellants from asserting their rights.

III. The claim of the appellants to be the children of Allen and Rebecca Carnes is denied in the pleadings, but we do not understand that it is now questioned. The evidence shows quite satisfactorily that they are what they claim to be. The conclusions we have announced make it unnecessary to determine several questions discussed by counsel.

IV. Claim is made that the mortgage of six hundred dollars now on the land was necessary to procure funds with which to protect the title and that the plaintiffs have derived benefit from, and should be charged with, the payment of a portion of it. As this claim is suggested rather than insisted upon, it is sufficient to say that it does not appear that the title of the plaintiffs could have been affected by any of the litigation in which Mrs. Davis participated, and it is not shown that they have in any manner been benefited by it. There is no sufficient reason, therefore, for charging them, nor their share of the

3. ——: incumbrances: accounting.

land, with the payment of any part of the mortgage debt. The cause will be reversed and remanded, with directions to the district court to take such steps in regard to an accounting between the parties in interest as shall be proper and to render a decree in harmony with this opinion. REVERSED.