RAPE et al. v. COCHRAN et al.   (No. 8273.)

(Court of Civil Appeals of Texas. Dallas. Dec. 13, 1919. Rehearing Denied Jan. 10, 1920.)

1. WILLS ⚖️297(4)—DECLARATIONS OF TESTATOR COMPETENT TO PROVE REVOCATION.

Where a will cannot be produced, and its last custodian has been some person other than the testator, testator's declarations that he had destroyed it for the purpose of revoking it are admissible.

2. WILLS ⚖️290—PRESUMPTIONS AS TO REVOCATION.

When a lost will has been established, if, when last seen, it was in testator's possession, the presumption is that he destroyed it; but if, when last seen, it was in the possession of some one other than testator, no such presumption arises, and the burden is on one claiming testator destroyed the will to prove that fact.

3. WILLS ⚖️290—REVOCATION BY DESTRUCTION ESTABLISHED; "DESTROY."

Where lost will had been delivered into another's possession by testatrix, and after such other's death it was not found, evidence that testatrix stated she had "destroyed" the will held sufficient to rebut the presumption that the will had not been revoked; such statement not being a conclusion, but a statement of ultimate fact, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 7859, the term "destroy," as applied to wills, meaning to burn or tear into fragments, and the destruction being the essential fact to be proved, as distinguished from the means used.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Destroy.]

4. WILLS ⚖️331(2) — CONFUSING INSTRUCTIONS ON REVOCATION PROPERLY DENIED.

Where the only issue was whether a lost will had been revoked by destruction, and such issue was submitted to the jury in appropriate language in a special charge, a requested charge that a will could be revoked only by "subsequent will, codicil, declaration in writing, or by the testator destroying, canceling, or obliterating same or causing it to be done in his or her presence," was properly refused as unnecessary and confusing.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Emma Rape and others against Ed. Cochran and others. From judgment for defendants, plaintiffs appeal. Affirmed.

Neyland & Neyland, of Greenville, for appellants.

L. L. Bowman and Clark & Sweeton, all of Greenville, for appellees.

RASBURY, J.   This is an appeal from the judgment of the lower court refusing to probate the last will of Mrs. A. E. Cochran, alleged to have been lost or misplaced, but never revoked, entered upon special verdict of the jury finding that the testator destroyed same. The facts deducible from the evidence are not in substantial dispute and are in substance these:

About the year 1907 Mrs. Cochran made a will, in statutory form, by which she devised to her daughter Emma her entire estate, nominating her daughter independent executrix without bond. She died in November, 1916. At the time of making the will Mrs. Cochran was feeble, and was cared for by her said daughter, who alone resided with her and who was unmarried. About six years after Mrs. Cochran made her will, however, Emma married, and she and her husband lived with Mrs. Cochran thereafter until she died, a period of about three years. The will was delivered to Dr. Mitchell, Mrs. Cochran's physician, for safe-keeping. Dr. Mitchell placed the will in one of a number of pigeon holes maintained in the vault of a bank at Campbell for the use of its patrons, one of which was assigned to him. The patrons had access to the pigeon holes at any time while the vault was open. Dr. Mitchell died in December, 1913, of a lingering malady, during which time he would, at different periods, send for some of his papers, and on one occasion he sent for and secured all of them, subsequently returning a package. Those in custody of the papers at the bank were unable to say whether he removed the will at any time, or whether he retained same at the time he removed all of his papers. After Dr. Mitchell's death, which preceded that of Mrs. Cochran, C. H. Kimble, one of his executors, examined all private papers belonging to Dr. Mitchell which could be found, including those at the bank, but did not discover Mrs. Cochran's will.

Mrs. Cochran visited her son, A. E. Cochran, for a period of three or four days in June, 1915, preceding her death in November, 1916, during which time the subject of her property was broached, and during the discussion she told her son's wife that, while she had made a will, she had subsequently destroyed same, assigning as a reason that her daughter Emma then had a husband to make a living for her, and as a consequence as fair a "show" as any of the others, and further, in effect, that Emma's husband had children, whom she thought ought not to benefit from her property, and suggested to her son's wife that she induce her husband to invest his portion in a home. She also discussed her will with her son, A. E. Cochran, while visiting him, and the disposition made of her property. What was said was excluded, and forms the basis of cross-assignments by appellees. On the day of the testator's funeral, Mrs. Rape, in the pres-

ence of a Mrs. Worsham, in reply to a question from her niece, Stella Cochran, asserted that her mother did not leave her everything, only the household goods. Mrs. Rape denied both the conversation and the statement in toto.

Upon the facts recited, the trial judge propounded to the jury in form of the usual interrogatory one issue of fact, which was, "Did Mrs. A. E. Cochran, during her lifetime, destroy the instrument offered by proponents as her last will and testament?" to which the jury replied, "Yes," and upon which answer judgment was rendered denying the application.

[1] The controlling issue in the case in final analysis is the sufficiency or probative force of the evidence to support the verdict and judgment; the issue being presented both upon the admissibility of the declarations of the testatrix and the sufficiency or probative force of the evidence as a whole. Whatever may be the rule in other jurisdictions, and what may have formally been the holding of the court of last resort in this jurisdiction, at this time it is the rule that "where a will duly executed cannot be produced, and its last custodian has been some person other than the testator, his declarations that he had destroyed the will, for the purpose of revoking it," are admissible. McElroy et al. v. Phink, Administrator, 97 Tex. 147, 76 S. W. 753, 77 S. W. 1025. The case cited notes the conflict in opinion of eminent judges and writers on the question, and reviews and in effect overrules former holdings of that court. For that reason we do not deem it necessary to attempt a presentation of the reasons or logic of the conflicting opinions. What is said in the case cited is controlling and should be observed.

[2, 3] We come, then, to the issue of the sufficiency of the evidence. In that connection the burden was upon appellees to prove that the will of Mrs. Cochran had been revoked. This is true, for the reason that all authorities we have examined are in agreement in holding, when the lost will has been established, (1) that when the lost will was last seen in the possession of the testator the presumption is to be indulged that he destroyed it; and (2) when last seen in possession of some person other than the testator no such presumption arises. In the case cited it is declared that a lost will stands upon the same footing as one produced in court; that is to say, when its execution is shown, "unattended by any circumstances which cast suspicion upon it," the presumption prevails that it was not revoked, if when last seen it was in the possession of some one other than the testator. The proof attending the execution of Mrs. Cochran's will was clear and convincing, and unattended by any circumstances in

that respect. A different rule applies, of course, if last seen in the possession of the testator. Then did appellees rebut the presumption arising as matter of law that the will had not been revoked?

In the case cited the facts were that Mrs. McElroy's husband went to the custodian of her will and requested and was given possession of it, and that thereafter Mrs. McElroy declared that she had destroyed it by burning, assigning as reasons therefor that she was dissatisfied with the treatment accorded her by the beneficiary in the will and the manner in which he was conducting himself. This court held such facts insufficient to prove revocation (74 S. W. 61), which the Supreme Court in turn held to be error, going so far as to overrule former decisions in that respect. In the case at bar the facts are that Mrs. Cochran delivered the will into the possession of Dr. Mitchell for safe-keeping, who placed it in the bank vault with his private papers. Thereafter on several occasions he removed some of his papers from the vault, and on one occasion before his death removed all of them. Mrs. Cochran, about 2½ years after his death, declared that she had destroyed the will, assigning as reason that her daughter Emma, the beneficiary in the will, was then married and had some one to care for her, and because her daughter's husband had children by a former wife, who she thought ought not to benefit from her property to the exclusion of her children and grandchildren; also after Mrs. Cochran's death careful and thorough search was made of all Dr. Mitchell's private papers by his executor for the will, but it was not found. The difference in substance in the facts in the two cases is slight, if any, so far as relates to the possession of the will, for, while the evidence in the McElroy Case shows the will was delivered by the custodian to McElroy, it fails to show that he in turn delivered it to his wife. Possession by the husband, the court said, raised no presumption that Mrs. McElroy destroyed the will, especially since its provisions were adverse to his interests.

There is, however, a difference in the facts concerning the act or mode of destroying the will. Mrs. McElroy testified that she destroyed her will by burning, while Mrs. Cochran merely stated that she destroyed hers. Upon this point counsel for appellants lay particular emphasis, contending that the statement is but a conclusion. While the point is not free from difficulty, we have reached the conclusion that it was sufficient to support the verdict. The bare assertion by one that he or she had made a will, or revoked one, would be a conclusion, and could not form the basis of a finding of revocation, for the reason that a number of things attend the making of a will, such as

signing by the testator in the presence of two subscribing witnesses, etc., and the doing of those and other essential things are not proven by the bare declaration of the testator that he made a will. Similarly, a will is not proven to have been revoked by the bare declaration of the testator that he revoked it, for the reason that wills, once made, can only be revoked, among other methods, by "destroying, canceling, or obliterating." Article 7859, Vernon's Sayles' Civ. Stats. The declarations in both instances are but conclusions. It is not a conclusion, however, to say that a will has been destroyed. To destroy, popularly or commonly considered, means to put an end to any given thing as such. The term has been held to mean to demolish, pull to pieces, wrench apart. 18 C. J. 975. To which we think might be added, as relates to wills, to burn or tear into fragments, since such methods are not an uncommon way of destroying such and other documents of a legal character. Such being the literal meaning of the term used by Mrs. Cochran, it occurs to us it carried with it its full meaning, and proved as a consequence the very act of destruction. To have declared that she destroyed her will, and that she accomplished it by any of the methods enumerated, would only have shown the means employed, while neither adding to nor detracting from the act of destruction implied from the term used. The destruction of the instrument, in our opinion, is the essential to be proven, as distinguished from the means used for that purpose.

[4] The appellant requested, and the court refused, an instruction advising the jury in substance that a lawfully executed will could only be revoked by one of the modes prescribed by the statute, enumerating each of the statutory methods in the charge. The charge, in our opinion, was properly refused. As we have shown, the only issue in the case was whether the will had been destroyed, and hence revoked. That single issue was submitted to the jury in appropriate language in a special charge. To tell the jury that a will could only be revoked, except by "subsequent will, codicil, declaration in writing, or by the testator destroying, canceling, or obliterating same, or causing it to be done in his or her presence," when the evidence only presented the issue of destruction, is unnecessary and confusing, and the refusal to allow such an instruction could in no event constitute error.

All other issues presented, among them the refusal of the court to peremptorily direct verdict for appellants and to grant them a new trial, are disposed of adversely to appellants by the conclusion we have reached on the first issue discussed in this opinion.

Believing no reversible error is shown, it becomes our duty to affirm the judgment.

Affirmed.