IN RE ESTATE OF MARY NISH.

J. H. NISH et al., Appellants, v. W. S. McCAULL, Executor, et al., Appellees.

No. 42860.

JUNE 21, 1935.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellants.

Rolla Shewmaker and Emmert, James & Lindgren, for appellees.

ALBERT, J.—Mary Nish was a resident of Des Moines, and died on January 17, 1932. She had been twice married; and had one child, Alice McDowall Curtiss, by her first husband, and six children by her second husband.

On the 12th of October, 1931, she made a will. Among other provisions therein was:

"I am leaving nothing to my daughter, Alice McDowall Curtiss, for the reason that she is a daughter by my first husband, and my other children are from my second husband, from whom I received whatever property I now possess."

On the 28th day of December, 1931, she made a codicil to this will, by which she amended her original will as follows:

"I stated in my last will and testament that I left nothing to my daughter Alice McDowall Curtiss, for the reason that all of my property I then and now own was derived from my second husband, John Nish, and that she, the said Alice McDowall Curtiss, was my daughter by my first husband, Alexander McDowall, I now add that should I in any manner, by inheritance, will, devise or bequest, come into possession of any money or other property from or through any of the relatives of my first husband, Alexander McDowall, that such property shall at my death pass to my daughter, Alice McDowall Curtiss, and, this change in my last will and testament shall mean that especially, should I inherit any money or other property from or through William D. Nelson, now deceased, late of Chicago, Illinois, or from or through his widow Mary McDowall Nelson, now of Chicago, Illinois, that any such bequest or inheritance shall pass at my death to my daughter, Alice McDowall Curtiss. By the words inherit, I also mean this to cover any gifts of any nature coming to me from or through any of the relatives of my former husband, Alexander McDowall."

This codicil was duly signed and witnessed.

On October 14, 1933, said will and codicil were admitted to probate in the district court of Polk county, Iowa, and executors were appointed and qualified.

On the 5th of August, 1934, J. H. Nish, Mae M. Nish, and Jessie F. Metier, children of the deceased, filed in the district court of Polk county, in the estate of Mary Nish, deceased, verified objections to the probate of the codicil and the will which had been previously probated. By amendment they, in substance, asked that the court find that this codicil was not a valid and existing codicil to the said will and that the same be set aside.

After the due making of this will and codicil, and under date of January 4, 1932, the deceased wrote a letter to W. S. McCaull, a relative and attorney, who resided at Garden Grove, Iowa, the material part of which is as follows:

"Dear Will: * * * I just think if Uncle Will left me anything he did it to help me and Allie will get a good deal from Uncle Will and Aunt Mamie too. I do not feel that it is just to leave it to her the other children will have to take care of me if I am sick and pay all the expenses too & they wont have so much. I think Allie will be well taken care of so please destroy that last part of the will I have not told anyone a thing about this. * * * Aunt Mary Nish."

It is conceded that the "Allie" referred to in this letter is Alice McDowall Curtiss, and that "Uncle Will" refers to William D. Nelson, the same party referred to in the codicil to the will.

Immediately on receipt of this letter, and before the death of the decedent, W. S. McCaull, to whom the letter was directed, took the codicil to said will and tore it into some thirty or more pieces and threw the same into his desk. He later gathered these pieces together and put them in an envelope. Of this destruction of the codicil Mary Nish was advised before her death. Probably a year after her death, McCaull gathered the pieces of the codicil together and had them pasted on another sheet of paper, and the same was in that condition at the time the will and codicil were admitted to probate on the 14th day of October, 1933.

The first question raised is that the proceedings is irregular and that the court had no jurisdiction to entertain the

same. If this proceedings was brought in the wrong court, the remedy of the parties was to move to change it to the right forum, under sections 10944, 10945, 10946, and 10949, Code of 1931. Ashlock v. Sherman, 56 Iowa 311, 9 N. W. 242; McName v. Malvin, 56 Iowa 362, 9 N. W. 297; First National Bank v. Green, 59 Iowa 171, 13 N. W. 75; Goodnow v. Wells, 67 Iowa 654, 25 N. W. 864; Bibbins v. Clark, 90 Iowa 230, 57 N. W. 884, 59 N. W. 290, 29 L. R. A. 278; Niemand v. Seemann, 136 Iowa 713, 114 N. W. 48; Kamrar v. Butler, 164 Iowa 293, 145 N. W. 879. The substance of these holdings, together with the statutes above referred to, shows that the fact that the action may be in the wrong forum is not jurisdictional.

The crux of this case lies in the question of whether this codicil was revoked within the meaning of the statutes of this state. The statute (section 11855) reads as follows:

"Wills can only be revoked in whole or in part by being canceled or destroyed by the act or direction of the testator, with the intention of so revoking them, or by the execution of subsequent wills. When done by cancellation, the revocation must be witnessed in the same manner as the making of a new will."

Two questions are raised under this section of the statute: (1) Where an attempt is made to revoke a will by destroying the same, must the destruction be by direction of the testator; and (2) if so, must the destruction of the will occur in the presence of the testator?

There can be no question, under the fact situation in this case, that the intent of the testator was to revoke this codicil. As to whether or not the destruction of the codicil must be done in the presence of the testator we think is not debatable under our statute. It will be noted that there is no requirement in these clauses of the statute that the destruction shall be in the presence of the testator. Some cases are cited in the briefs which hold that the destruction must be in the presence of the testator, but an investigation of the statutes of the states shows that such is the special statutory provision under which these decisions are made, and they cannot be considered as authority in this state. It might have been a wise provision to have attached to this section of the Code that the destruction must be in the presence of the testator, but, so long as the legislature did not make such requirement, we have no power to add it to the statute. Hence,

it is our conclusion that the physical destruction of the codicil need not be in the presence of the testator. In the case of Gay v. Gay, 60 Iowa 415, 14 N. W. 238, 46 Am. Rep. 78, we made the pronouncement that the method of revoking a will or codicil is statutory, and no more than the statute requires need be done. This letter directed the revocation of this codicil to the will by ordering the same destroyed; the directions in the letter were carried out and the testatrix was advised of such destruction of the codicil. We think this was a sufficient compliance with the requirements of this section to operate as a revocation of the said codicil.

One other question is urged, and that is that there was in fact no revocation, because the codicil, having been torn in pieces, was reconstructed and thereby rehabilitated as a valid codicil. The rule on this question is stated in 68 C. J. p. 819, section 515, as follows:

"It has been held that the retention of the part torn from the will does not affect the revocatory effect of the tearing * * * Where the will is torn into several fragments it is revoked even though a person other than the testator subsequently sews such fragments together so that the will is perfectly legible."

Some light is thrown on this subject, also, by section 138, vol. 28, Ruling Case Law. The question is squarely decided in Sweet v. Sweet, 1 Redf. Sur. (N. Y.) 451; and sidelights thereon may be found in Evans' Appeal, 58 Pa. 238; Rape v. Cochran (Tex. Civ. App.) 217 S. W. 250; Johnson v. Brailsford, 2 Nott & McC. (S. C.) 272, 10 Am. Dec. 601.

We think the trend of authority is to the proposition that if the codicil is torn in pieces by the testator, or by his direction, with an intent on the testator's part thereby to revoke said codicil, the revocation is complete and it cannot be affected by gathering the parts together and thereby reconstructing the instrument.

We therefore reach the conclusion that the court erred in its ruling and that it should have held that the aforesaid codicil had been revoked and was no longer of any validity.—Reversed.

ANDERSON, C. J., and MITCHELL, DONEGAN, KINTZINGER, RICHARDS, and HAMILTON, JJ., concur.