J. J. Jennings, Administrator de bonis non, Appellant, v. William H. Schmitz et al., Appellees; Society of the Divine Word, Intervener, Appellant.

No. 46769.

December 11, 1945.

Rehearing Denied May 10, 1946.

Dan J. Buckley, of Harlan, for appellants.

G. O. Hurley, of Harlan, for William H. Schmitz, Frances Schmitz, Henry Schmitz, and Marie Schmitz, appellees.

J. J. Jennings, of Harlan, for Bernice Hargarten, Robert Hargarten, Richard Hargarten, Joseph Hargarten, Eugene Hargarten, Nicholas H. Hargarten, Jr., and Nicholas H. Hargarten, Jr., Guardian of Bernice Hargarten, Robert Hargarten, Richard Hargarten, Joseph Hargarten, and Eugene Hargarten, Minors, appellees.

Garfield, J.—In May 1920 William Schmitz died, his will was probated and his sons John and Tony were appointed executors. Clause III of the will devised a one-hundred-sixty-acre farm to his son Will and daughter Marie Hargarten, subject to a charge of $100 per acre. They accepted the devise, mortgaged the land for $14,000 and early in 1921 paid the net proceeds of the loan, $13,300, to the executors. This suit commenced by the administrator de bonis non upon demand of the Society of the Divine Word of Techny, Illinois (herein called "the Society"), seeks to establish and foreclose a lien for $2,700, the unpaid balance of the total charge of $16,000. Clause II of the will provided for a legacy of $5,000 to the Society, a Catholic

educational institution, which is wholly unpaid. The will was before us for construction in In re Estate of Schmitz, 231 Iowa 1178, 3 N. W. 2d 512.

The amended answer alleged that in February 1935 the son Will acquired the share in the land of his sister, Marie Hargarten (who has subsequently died), and deeded the entire farm to his wife, Frances, in April 1942. Frances also alleged in her answer that a probate order made in February 1921, approving a report of the executors, which stated that they had collected the $16,000 from Will and Marie, constituted an adjudication against plaintiff herein; the heirs and legatees other than the Society had orally agreed to accept $13,300 in full settlement of Will's and Marie's obligation to pay $16,000; the administrator de bonis non is not a proper party plaintiff; laches and the statute of limitations.

Plaintiff's reply alleged that the probate order of February 1921 was ex parte and was procured by fraud of the executors and also of Will and Marie in that the report which the order approved falsely stated that the full $16,000 had been paid the executors when only $13,300 had been paid; the first knowledge that only $13,300 had been paid was in January 1941, when the executors filed their final report and resignation; Will and his wife, Frances, Marie Hargarten and her heirs have all been nonresidents of Iowa since the testator's death. Plaintiff prayed that the 1921 order be set aside.

The trial court held that the 1921 ex parte probate order is an adjudication which deprived it of jurisdiction to grant plaintiff relief and dismissed his petition.

The evidence shows that on February 18, 1921, the executors filed a report which stated they had collected from Will and Marie the $16,000 charged against the one hundred sixty acres and had received $5,000 from the heirs "charged with the payment thereof, and are holding said sum in trust until there shall be a student from the family or from the parish of Westphalia, Iowa, desirous of entering said aforesaid school at Techny, Illinois." The itemized statement of cash receipts, part of the report, listed $16,000 "received from Mari and Wille Schmitz, as per will," and deducted $5,000 from the balance on hand to be held by John and Tony (the executors) as

trustees for the Society. The will provided that the legacy to the Society was to pay for a student from the family or from the parish of Westphalia, where testator lived, and made the $5,000 a charge against the residuary legacies of testator's five sons and his daughter, Marie. See In re Estate of Schmitz, supra, 231 Iowa 1178, 3 N. W. 2d 512.

No notice of the above report was given anyone. On the same day the report was filed there was also filed an order approving the report, purporting to have been signed three days earlier. The order recited, "the court being advised from said statements of said report, finds" that the executors have collected $16,000 from Marie and Will and also $5,000 for the Society and "hold the same, subject to the further order of this court." The order approves the report, confirms the title to the one hundred sixty acres in Marie and Will free from any claim of the estate, appoints John and Tony trustees of $4,750 (net amount of the $5,000 legacy to the Society, after the payment of the state inheritance tax) "for the use and benefit of any student, belonging to the family of deceased, or to the parish of Westphalia."

Upon the trial it was shown without dispute that the executors had never collected more than $13,300 of the $16,000 charged against the land devised to Will and Marie and had never collected from the residuary legatees any of the $5,000 legacy to the Society. The true facts were first made a matter of record in the executors' "Final Report and Resignation" filed January 6, 1941, which stated that the report filed February 18, 1921, was in error in these respects. Apparently one of the reasons—perhaps the principal one—why the 1921 report falsely stated that the full $16,000 had been paid was to deceive the company to which Will and Marie had applied for a loan on the land and to facilitate the making of the loan.

The final report also revealed that, while no part of the $5,000 for the Society had been collected from the residuary legatees liable therefor, the executors had paid out to them, under the residuary clause of the will, a total of $7,243 and an additional $1,000 to the daughter Anna, also a residuary legatee but whose legacy was not charged with payment of any por-

tion of the $5,000. Of the $7,243, Marie was paid $2,200; Will, $885; John, $1,500; and Tony, $2,658.

In February 1941 the court appointed J. J. Jennings administrator de bonis non and continued until further order the hearing on the executors' petition for discharge. Soon thereafter Jennings commenced the action to construe the will to which we have referred and, as authorized by the court on November 21, 1942, this action was started on December 2, 1942.

I. Appellee Frances Schmitz (Will's wife and present titleholder) contends that until the ex parte order of February 18, 1921, is set aside by an action *in the pending probate proceeding* the trial court is without jurisdiction in this action to grant the relief prayed for. Appellee apparently does not seriously contend that the order would not be set aside in probate upon such a record as we have here. She says in argument, "We readily admit that intermediate orders and ex parte orders in probate proceedings are subject to attack in the probate proceedings at all times before final settlement." She also concedes, "It was perfectly proper for the administrator de bonis non to bring an action in equity to enforce a lien against the real estate involved."

Appellee Frances Schmitz invokes the rule of priority of jurisdiction: the court which first takes cognizance of an action over which it has jurisdiction and power to afford complete relief has the right to dispose of the controversy without interference from another court of concurrent jurisdiction in which a similar action is later instituted between the same parties. See 21 C. J. S. 745, section 492; 14 Am. Jur. 435, section 243; Peff v. Doolittle, 235 Iowa 443, 15 N. W. 2d 913. From this legal principle appellee argues that exclusive jurisdiction to set aside the 1921 order rests in the probate court. The rule which appellee urges is not applicable here and her argument is unsound.

Assuming, without deciding, that probate is the proper *forum* to set aside the 1921 order, there was no lack of *jurisdiction* in the trial court to grant such relief in this action in equity. There was no attempt here to deprive the court in which the probate proceeding is pending of jurisdiction. The

contention that appellant was seeking in equity relief which should have been sought in probate does not go to the jurisdiction of the court nor does it justify the denial of relief in this action. The trial court had jurisdiction to grant any relief in this action which the evidence warranted. Doyle v. Dugan, 229 Iowa 724, 732, 295 N. W. 128, 132, and cases there cited; In re Will of Proestler, 227 Iowa 895, 901, 289 N. W. 436; In re Estate of Nish, 220 Iowa 45, 48, 261 N. W. 521, 100 A. L. R. 1516, and cases cited; Todd v. State Bk., 182 Iowa 276, 294, 295, 165 N. W. 593, 3 A. L. R. 971; Reiger v. Turley, 151 Iowa 491, 497, 131 N. W. 866.

The trial court is the identical court in which the probate proceeding is pending. Time and again we have pointed out that there is but one court of general jurisdiction in Iowa —the district court. Before it all proceedings come, whether law, equity, or probate. Forms of action differ but they are not controlling. Separate dockets are kept for convenience and efficiency, to expedite but not to clog the administration of justice. The remedy to which a party to an action is entitled may be awarded in utter disregard of its place on the calendar, unless objection thereto is raised in the manner prescribed by statute—a motion to transfer to the proper docket. If no such motion is made, any error in the kind of proceedings adopted is waived. See sections 10944, 10946, 10949, Code, 1939. Since no such motion was made here, appellant was entitled to have the 1921 order set aside in this action as prayed for by him, if he would have been entitled to such relief in probate upon the same showing.

Some of the many decisions which support the foregoing views, in addition to the cases above cited, are: Consolidated Constr. Co. v. Begunck, 233 Iowa 463, 472, 9 N. W. 2d 390, 395, and cases there cited; In re Estate of Weidman, 209 Iowa 603, 606, 607, 228 N. W. 571; Dorris v. Miller, 105 Iowa 564, 572, 574, 75 N. W. 482; First Nat. Bk. v. Green, 59 Iowa 171, 13 N. W. 75 (distinguishing Hutton v. Laws, 55 Iowa 710, 8 N. W. 642, upon which appellee relies); McName v. Malvin, 56 Iowa 362, 9 N. W. 297; Ashlock v. Sherman, 56 Iowa 311, 9 N. W. 242.

■ There can be little doubt that the 1921 order does not constitute a defense to this action and should be set aside. We have repeatedly held that an ex parte probate order such as this does not amount to an adjudication, is merely prima facie correct and subject to review at any time during the set- · tlement of the estate and, under certain circumstances, thereafter. This is the effect of section 12049, Code, 1939. Here the prima facie showing of correctness of the order is conclusively rebutted. The order shows on its face that the statements in the report formed. the basis for the order. In their final report and in oral testimony the executors themselves frankly admitted such statements were false. No court with knowledge of such falsity would have approved the report and found the facts as therein stated. No court with knowledge of the true facts should hesitate to set aside the order.

Among the numerous decisions which support our conclusion are: In re Estate of Robinson, 231 Iowa 1099, 1101, 3 N. W. 2d 158, 160, and cases there cited; In re Estate of McAllister, 191 Iowa 906, 911–914, 183 N. W. 596; In re Estate of Douglas, 140 Iowa 603, 605, 117 N. W. 982, and cases cited; In re Kimble v. Dailey, 127 Iowa 665, 670, 103 N. W. 1009; Ashlock v. Sherman, supra, 56 Iowa 311, 9 N. W. 242; Clark . v. Cress, 20 Iowa 50, 54, 55.

■ II. Another defense is that the legatees *other than the Society* agreed to accept $13,300 in satisfaction of the charge of $16,000. Although the evidence in support of this contention is far from conclusive, we may assume there was such an agreement. Appellee argues that legatees may make settlement among themselves contrary to the terms of the will so long as the settlement does not prejudice rights of anyone not a party thereto. This proposition may be accepted without considering either its correctness or appellant's contention that here there was no consideration for any agreement to accept less than the full amount of the charge. Appellee contends the Society was not prejudiced because the executors at one time had · sufficient money to pay the Society's legacy. It is said the Society's complaint is against the executors for their misapplication of funds with which the legacy might have been paid. The contention is without merit.

The executors' final report filed January 6, 1941, the correctness of which is not questioned, shows total collections of $13,896 ($596 in addition to the $13,300), disbursements of $5,653 on claims and charges against the estate and, as before stated, distribution of the balance of $8,243 among the residuary legatees. Nothing was left for the Society. The fair inference is that the executors disbursed these sums soon after they received the $13,300. Also, as stated before, Marie Hargarten received $2,200 and Will $885 of this balance of $8,243.

Of course, the executors had no right to pay the residuary legatees without making provision for paying the Society. But Will and Marie, whose land was subject to the $16,000 charge and who became obligated to pay it by accepting the devise (see Anderson v. Anderson, 234 Iowa 277, 280, 12 N. W. 2d 571, 573, and authorities there cited; annotation 116 A. L. R. 7, 13), participated in such misapplication of funds and benefited therefrom. These devisees were then in no position to blame the executors for the dissipation of these funds. There is no contention that appellee stands in any better position than her grantor husband. While the Society may have some claim against the executors for misapplication of funds, we know of no theory upon which these facts would constitute a defense to this action.

While it is admitted the Society was not a party to any agreement to accept $13,300 in satisfaction of the charge of $16,000, appellee contends it later acquired knowledge of it and ratified it, or at least acquiesced therein. It is sufficient to say the evidence does not support this contention.

III. There is no merit in appellee's contention that the Society and not the administrator d. b. n. is the proper party to have brought this suit. In In re Estate of Schmitz, supra, 231 Iowa 1178, 3 N. W. 2d 512, we held the legacy to the Society was not a direct charge against the one hundred sixty acres. While it is true the Society stands to benefit from a recovery herein, the cause of action is one in favor of the estate which may properly be asserted by the administrator. Until debts and legacies are paid the administrator may sue to recover estate assets. Here there are costs and expenses of administration, as

well as the $5,000 legacy, which are unpaid. The relation between appellant and the Society is similar to that of trustee and cestui. In support of our conclusion, see section 10968, Code, 1939; Grimmell v. Warner (Dillon, J.), 21 Iowa 11; Rhodes v. Stout, 26 Iowa 313; Ellyson v. Lord, 124 Iowa 125, 133, 99 N. W. 582; Ryan v. Hutchinson, 161 Iowa 575, 584, 143 N. W. 433; Leach v. Farmers Sav. Bk., 205 Iowa 114, 116, 213 N. W. 414, 217 N. W. 437, 56 A. L. R. 801.

IV. Because the appellees have been nonresidents of Iowa since the testator died, this action is not barred by the statute of limitations. Code section 11013 provides:

"The time during which a defendant is a nonresident of the state shall not be included in computing any of the periods of limitation above described."

The fact that proceedings in rem might have been instituted against property of the appellees in this state does not render the saving clause found in 11013 inapplicable. We have so held several times and our holdings accord with the great weight of authority. Had the legislature intended that section 11013 would not be operative where a defendant has property in this state or where a proceeding in rem might be brought, we must assume the statute would have so provided. Section 11013 contains no such exception. It is a saving clause based on nonresidence of the defendant, and not on absence of property in this state.

Here the relation between the devisees of the one hundred sixty acres and appellant is somewhat analogous to that between maker and holder of a note and mortgage. The law implied an obligation upon the devisees, who accepted the devise, to pay the amount of the charge. Anderson v. Anderson, supra, 234 Iowa 277, 281, 284, 12 N. W. 2d 571, 574, 575, and authorities there cited. Clearly, due to their nonresidence, the statute has not run against such personal indebtedness. So long as such indebtedness remains as a binding obligation the equitable charge or lien, which is an incident to the debt, is not barred but may be enforced.

Our holding is supported by 34 Am. Jur. 179, 180, section 223; 37 C. J. 992–994, sections 381, 384, 385; annotations 119 A. L. R. 331, 333–335; Clinton County v. Cox, 37 Iowa 570;

Heaton v. Fryberger, 38 Iowa 185, 196, 197; Brown v. Rock-
hold, 49 Iowa 282; Robertson v. Stuhlmiller, 93 Iowa 326, 328,
61 N. W. 986; Leeds Lbr. Co. v. Haworth, 98 Iowa 463, 67
N. W. 383, 60 Am. St. Rep. 199; Jenks v. Shaw, 99 Iowa 604,
68 N. W. 900, 61 Am. St. Rep. 256. See, also, Burns v. Burns,
233 Iowa 1092, 11 N. W. 2d 461, 150 A. L. R. 306.

Since this is not an action to foreclose a real-estate mort-
gage, bond for deed, trust deed, or contract for the sale of real
estate, it is not barred by the special limitation found in Code
section 11028. It is perhaps well to note that the saving clause
contained in section 11013 does not apply to an action which
falls within the terms of 11028. Newgirg v. Black, 174 Iowa
636, 645, 156 N. W. 708. See, also, Newton v. Knox, 234 Iowa
1095, 1106, 13 N. W. 2d 795, 800; Ramiller v. Ramiller, 236
Iowa 323, 18 N. W. 2d 622.

█ V. We are not inclined to sustain the defense of
laches. It is said to be the rule that a suit to foreclose a mort-
gage cannot be defended on the ground of laches where the
cause of action on the secured demand is not barred by the
statute of limitations. 37 Am. Jur. 64, section 580; 19 Am. Jur.
342, 343, section 497, note 15; Cross v. Allen, 141 U. S. 528,
537, 12 S. Ct. 67, 35 L. Ed. 843, 849. See, also, Carter v. Cohen
Bros., I. & M. Co., 181 Iowa 588, 593, 164 N. W. 1040. But we
think the defense is not established here, even if we are to
assume it may be invoked in a case of this kind.

Mere delay in the assertion of a claim does not ordinarily
amount to laches. There must be an omission to assert a right
which, in conjunction with the lapse of time, has prejudiced
or damaged the adverse party. Lutton v. Steng, 208 Iowa 1379,
1382, 227 N. W. 414, and cases there cited; 30 C. J. S. 520,
521, section 112; 19 Am. Jur. 352, 353, sections 508, 509. See,
also, Copeland v. Voge, 237 Iowa 102, 109 et seq., 20 N. W.
2d 2, 6. The doctrine will be applied only where it would be
inequitable to permit recovery or it is clearly demanded in the
interests of justice. Keller v. Harrison, 151 Iowa 320, 324, 128
N. W. 851, 131 N. W. 53, Ann. Cas. 1913A, 300; Luke v.
Koenen, 120 Iowa 103, 106, 94 N. W. 278; 30 C. J. S. 528, 529,
section 115; 19 Am. Jur. 352, section 508.

It is not contended the administrator d. b. n. was guilty of laches. He was appointed in February 1941. This action was commenced December 2, 1942. In the meantime he maintained the will-construction suit, which was not concluded till June 1942. It is contended, however, the Society was guilty of laches and appellant is charged therewith.

The Society, an Illinois institution, first learned of its legacy about February 1, 1932, in a letter from the state treasurer. After some correspondence with the clerk of the district court of Shelby county, about March 1st it referred the matter to Mr. Frantzen, an attorney in Dubuque. Frantzen wrote the executors, who apparently made no reply. He then placed the matter with an attorney in Shelby county, who investigated the matter and on April 1, 1933, reported that the executors had not set aside the funds with which to pay the legacy and were insolvent. Thereafter an attempt was made to get settlement of the estate.

In May 1939 Marie Hargarten's surviving husband filed a petition for removal of the executors, upon which a citation was issued. In November 1940 the Society, through another attorney, caused the executors to be examined under oath and learned they had collected from Will and Marie only $13,300, had not collected from the residuary legatees the $5,000 for the Society, and had disbursed all money they had received. In the same month the Society also applied for removal of the executors. On January 6, 1941, the executors filed their final report and resignation, as before stated. In the following month appellant was appointed administrator d.b.n. In the will-construction suit which followed, the Society was an active participant.

The Society also litigated the question of the liability of the sureties on a bond furnished in 1921 by the executors as trustees for the $5,000 fund. (The Society had no notice and knew nothing of this bond nor of any attempted trusteeship at least until 1932.) In May 1941, following a trial, the court released said sureties because no funds came into the hands of the executors as trustees. In November 1942, the Society demanded of the administrator d.b.n. that he commence this suit.

As before stated, the Society's legacy was for the purpose

of paying for a student in its educational institution from the testator's family or the parish of Westphalia. There was no such student till 1936.

Appellees place much reliance on the fact that in February 1935 Will purchased the share of his sister in the one hundred sixty acres (the purchase price was $105 per acre) and erected a new house, barn, and some smaller buildings valued at $9,000. Just when these buildings were built is not shown definitely but it seems to have been between 1932 and 1935, before Will bought out his sister. It does not appear that the Society knew of the erection of these buildings nor of Will's purchase from Marie. His deed was not filed for record till October 1939. Although Will was a witness, there is no testimony that he bought out his sister or improved the land under the belief that it was relieved from the $16,000 charge. See 19 Am. Jur. 355, 356, section 512; 30 C. J. S. 540, 541, section 118. Will, of course knew that $2,700 of the charge had not been paid.

There is no evidence that any delay by the Society or the executors misled or deceived either of the devisees of the one hundred sixty acres. See Carnes v. Mitchell, 82 Iowa 601, 608, 48 N. W. 941. Presumably the money spent on improvements correspondingly enhanced the value of the property. There is no showing that the rights of any innocent third party have intervened nor that evidence material to the defense has been lost or obscured by any delay in bringing this suit. See Williams v. Allison, 33 Iowa 278, 286; 19 Am. Jur. 353, 354, 355, sections 509, 511, 30 C. J. S. 540, 542, sections 118, 119.

Precedents are of limited value on the question of laches, since each case must be determined according to the particular facts shown. Copeland v. Voge, supra, 237 Iowa 102, 111, 20 N. W. 2d 2, 6, 7; 30 C. J. S. 528, section 115. However, our conclusion finds support in the authorities cited above in this division and also in Dice v. Brown, 98 Iowa 297, 300–302, 67 N. W. 253; Applegate v. Applegate, 107 Iowa 312, 319, 320, 78 N. W. 34. In most of the cases cited by appellees on this issue there was an attempt to recover the ownership of land, not merely to enforce a lien, and the elements of estoppel or adverse possession were clearly shown.

■ VI. Appellant claims interest on the $2,700 from the testator's death. Ordinarily a testamentary charge against land, where the devise was accepted, would draw interest from the time payment was due. Such time here was about March 1, 1921, when the devisees (through tenants) took possession of the land. Such possession would ordinarily be an added reason for allowance of interest. See, as bearing on this question, Security Sav. Bk. v. Williams, 188 Iowa 904, 913–915, 176 N. W. 971; Dee v. Collins, 235 Iowa 22, 26, 15 N. W. 2d 883, 886. However, in view of the delay of the personal representatives in asserting the claim here made, their failure (so far as appears) to make prior demand upon the devisees or appellees for the $2,700 and under all the circumstances shown, we feel that interest at five per cent (see Code section 9404) should be allowed only from the commencement of this suit. In support of this conclusion see: 33 C. J. 233, 234, section 123, 47 C. J. S. 57, section 46; 33 C. J. 239, section 140, 47 C. J. S. 61, 62, section 50; 30 Am. Jur. 10, 11, section 7; Selzer v. Selzer, 146 Kan. 273, 69 P. 2d 708, 116 A. L. R. 1, 6, 7, and annotation 7, 62, 65; Dunham v. Deraismes, 166 N. Y. 607, 59 N. E. 903; Gilbert v. Taylor, 148 N. Y. 298, 42 N. E. 713, 715; Bushing v. Iowa Ry. & L. Co., 208 Iowa 1010, 1014, 226 N. W. 719; Stevens v. Pels, 191 Iowa 176, 194, 195, 175 N. W. 303.

We think appellant is entitled to a judgment in rem against the one hundred sixty acres for the unpaid balance of the $16,000 with interest from the commencement of this suit, and to the establishment and enforcement of a lien therefor. For the entry of a decree accordingly, this cause is—Reversed and remanded.

BLISS, C. J., and OLIVER, MILLER, HALE, WENNERSTRUM, and SMITH, JJ., concur.

MANTZ, J., takes no part.

MULRONEY, J., dissents from Division VI.

MULRONEY, J. (dissenting)—I concur in the majority opinion with exception of Division VI where the majority allow interest only from the date of the institution of suit. The clause

in the will allowed Will and Marie to buy the farm for $16,000. For specific language in the will, see our former decision construing the will in In re Estate of Schmitz, 231 Iowa 1178, 1179, 3 N. W. 2d 512, 514, as follows:

" '* * * that Mari and Will shall hav the one hundert and sixty akers Farm wath they call the George Schechinger Farm for One hunderd Doller per aker.' "

Will and Marie bought the farm and took possession immediately after the testator's death in March 1921. But they did not pay the full purchase price and the majority correctly hold there was a lien in favor of the estate for the balance due. I see no warrant for a conclusion in law or equity that the unpaid portion of the purchase price should not bear interest from the date of the purchase and sale. The authorities cited in Division VI for the majority conclusion do not support such a ruling. The record shows that Will and Marie received a total distribution of $3,085, mostly paid from the money they had paid into the estate for the farm. Under the will, Will should not have received any distribution and the distribution to Marie was in excess of the amount that should have been paid to her. Will and Marie received the income from the farm since they took possession in March 1921, after the testator's death. I would hold the portion of the unpaid purchase price should bear interest from that date.