W. W. THOMPSON et al., Appellants, v. ALFRED R. OHL,
                    Appellee.

TRUSTS: Resulting Trusts—Widow's Interest in Land. If title to
1  a widow's undivided one-third interest in land passes without
   consideration to her subsequent husband, he will be assumed
   to have become a trustee, and will be required to account there-
   for, after her death, to her children by her prior marriage.

DESCENT AND DISTRIBUTION: Advancements—Conveyance by
2  Mother to Son—Presumption. It is to be presumed that a con-
   veyance by a mother to a son without consideration is an ad-
   vancement.

*Appeal from Johnson District Court.*—R. G. POPHAM,
                    Judge.

                 OCTOBER 25, 1919.

THE opinion states the facts. Plaintiffs appeal from a
decree dismissing their petition.—*Affirmed.*

*G. F. Buresh* and *F. H. Kubicek,* for appellants.

*Henry Negus,* and *Dutcher, Davis & Hambrecht,* for
appellee.

LADD, C. J.—James Thompson died intestate, in An-
dersonville Prison, March 25, 1865, seized of 85 acres of
land in Johnson County, and survived by his wife, Hannah
A. Thompson, and two children, W. W. Thompson, then 13
years old, plaintiff herein, and Anna A. Thompson, about 8
years of age. The widow became guardian of these chil-
dren, and, on final settlement, paid the son $450, and was
discharged as guardian of him, February 19, 1874, and on
final settlement with the daughter, paid her $505, and was
discharged January 4, 1877. The widow and these children
took an undivided one-third interest in the land each; but
the former, with her husband, Alfred R. Ohl, whom she had

married 2 or 3 years after her former husband's death, conveyed her one-third interest therein to her son, W. W. Thompson, February 19, 1874, the day she was discharged as his guardian. The consideration named was $750. The grantee, W. W. Thompson, on April 5, 1875, executed a warranty deed, conveying an undivided two-thirds interest in the land to defendant, Ohl, reciting a consideration of $1,500. Thereafter, in December, 1880, Ohl, with his wife, conveyed the land to Gruwell, reciting a consideration of $2,975; bought it back April 3, 1882, at a named consideration of $7,200; and April 30, 1909, disposed of it to Sidwell for $16,000. The contention of the plaintiffs is that the title to the one-third interest of the widow was taken by the defendant, held by him in trust for the widow, and never accounted for; and that, as trustee of a resulting trust, he should be required to account to her heirs, she having died in 1911, for the proceeds of the land, with interest or accumulated profits. The plaintiffs are the son, W. W. Thompson, and the husband and nine children of Anna A. Thompson, who died in 1912. The petition alleged that the fruits of the marriage to Ohl were two sons, C. A. and D. W. Ohl, and that these had been provided for by advancements; but there was no proof to that effect. It also appears that, shortly after the marriage of Anna A. Thompson to Harry Vincent, January 1, 1877, they conveyed the former's undivided one-third interest in the land to the defendant, Ohl, reciting a consideration of $800. Thereafter, the title continued in Ohl, until he conveyed it to Gruwell.

No doubtful question of law is involved. If

1. TRUSTS: resulting trusts: widow's interest in land.

title to the widow's undivided one-third interest in the land passed to Ohl without consideration,—and this has been proven by clear and satisfactory evidence,—he will be assumed to have become a trustee for that portion of the land, and will be required to account therefor. No question is raised but that

the children of James A. Thompson, deceased, obtained their share of his estate, the sole controversy relating to the share of the widow. She retained title thereto until she, with her husband, conveyed her undivided interest in the 85 acres to her son, W. W. Thompson, on February 19, 1874. The deed recited a consideration of $750. The grantee therein testified that he never purchased his mother's interest in this land; had no recollection of receiving any deed therefor, or of having made any conveyance to the defendant, Ohl, or to anyone else. But he did convey the undivided two-thirds interest to him, April 5, 1875, reciting therein a consideration of $1,500. He was asked:

"Q. What did she pay you for it? A. Yes, they fixed up the settlement. Q. Do you remember what she paid you for it? A. No. Q. You don't remember? A. Not just now I don't. Q. Do you remember the price per acre that you sold it for? A. About $25 an acre. Q. For your third interest? A. Yes. * * * Q. Have you learned through anybody that you did make such a deed? A. No. Q. So that, if you ever did make a deed of this land to Alfred R. Ohl, you don't know anything about it,—that is true, is it? A. Yes. Q. Do you remember of ever executing a deed to your interest in this land to anybody? A. Well, we had so awful many little deals around that way that they kind of slipped my mind. Q. Well, am I right, then, when I assume that you now have no recollection of ever having made a deed to your interest in your father's land to anybody? A. I can't remember it."

But he made affidavit, December 7, 1896, "that, on April 5, 1875, when I conveyed the undivided two-thirds interest of the N ½ of the SE ¼ of Section 19, * * * I was a single man;" and the affidavit was recorded on the next day! Nor was the witness any more definite concerning the conveyance by his mother of her undivided one-third interest to him.

"Q. Do you remember of a deed to any part of this land which your father owned at the time that he died having been made to you? A. No. * * * Q. You say you never bought any third interest from her? A. No. Q. Did you ever pay any money to your mother for her interest for her one-third interest in the farm? A. Why, I don't think I bought the third interest in it. Q. You say you never bought any third interest from her? A. No."

But, on redirect examination, the witness swore that he sold his one-third interest in the 85 acres to defendant, Ohl, and that he paid the money for it; that he thought the price was "about $25 per acre,—that was about the price of the land. My mother had something to do with the buying of the land—this third interest. She helped to buy it. I understood it was to belong to my mother when I was selling it. I don't know about the title being put in Mr. Ohl's name. * * * I talked with Mr. Ohl in recent years in my mother's presence, when they were living on the Mt. Prospect farm, about the share that I was to get. He said there was some money coming to my sister and myself. My mother said she wanted us to have what belonged to us. This was probably eight or ten years before my mother died."

Ohl, when talked to by the witness in 1914 or 1915, denied all liability. In a conversation many years prior to her death, Ohl had said, concerning $200 borrowed of him by the witness, and long past due: "I don't know what your mother is going to do with her part of the property." It will be observed that no allusion to any interest in the 85 acres or proceeds thereof was made, or even is to be inferred, from anything said in any of their conversations. They were had 20 or more years after the title of the land had passed to Ohl. He had a quarter section, well stocked, when married, and appears to have been thrifty financially; and for all that appears, reference may have been to her in-

choate interest in his property, or property subsequently acquired. The only circumstance tending to show that the witness may not have negotiated for his mother's third is that he had nothing at that time, except about $100 which he had earned, and the $450 paid him by his guardian, and with these sums, he thinks he purchased horses and machinery with which to engage in farming. But this evidence does not negative the presumption that the conveyance by the mother to him, though without consideration, was by way of advancement. *Burton v. Baldwin,* 61 Iowa 283; *McMahill v. McMahill,* 69 Iowa 115; *Bissell v. Bissell,* 120 Iowa 127; *Phillips v. Phillips,* 90 Iowa 541; *Finch v. Garrett,* 102 Iowa 381; *Mossestad v. Gunderson,* 140 Iowa 290. The presumption has not been met. What may have been the understanding of this witness, or of Harry Vincent, who testified, is not evidence thereof; and neither of them appear to have any definite recollection of the transactions of 40 years ago. Upon a careful examination of the entire record, we reach the conclusion: (1) That the evidence is not of that clear and satisfactory character exacted to establish a resulting trust; (2) that the considerations recited in the deeds from the widow to Thompson, and from the latter to defendant, have not been satisfactorily shown to be other than recited therein; and (3) that, if the deed from the widow to Thompson was without consideration, the presumption that it was executed by way of advancement has not been overcome, and therefore the grantor retained no interest therein when Thompson conveyed to Ohl. A resulting trust was not proven, and the court did not err in dismissing the petition.—*Affirmed.*

2. DESCENT AND DISTRIBUTION: advancements: conveyance by mother to son: presumption.

EVANS, PRESTON, and SALINGER, JJ., concur.