DINAH F. IRVING, Appellant, v. L. M. GRIMES, Trustee, et al.,
Appellees.

No. 39563.

MAY 14, 1929.

*Graham & Osborn,* for appellant.

*Howard & Sayers, Wilson & Harris,* and *Guy C. Richardson,*
for appellees.

DE GRAFF, J.—Under the will of Robert Irving, deceased,
plaintiff acquired one fifth, John W. Irving, her brother, and
two other brothers, each one fifth, and William Irving and Jen-
nie Derr, each a one-tenth interest in the land in controversy.
The two brothers conveyed to plaintiff and to John W. Irving
their respective one-fifth interests. The two one-tenth interests
were conveyed by the owners thereof by deed, naming John W.
Irving as grantee. Hence plaintiff holds the legal title to two
fifths, and John W. Irving the legal title to three fifths. John W.
Irving's interest was sold under execution on judgment against
him, and defendants are the owners of the interest so sold. Plain-
tiff contends that the two one-tenth interests were purchased
and paid for out of her money, and that she is, therefore, the
owner of such two-tenths shares, under resulting trust. This
court has said that:

"The evidence relied upon to establish a resulting trust must be clear and certain, and such as to 'convince the mind of the trier of the truth of the facts on which equity builds a resulting trust.' *In re Estate of Mahin*, 161 Iowa 459." *Myers v. Wendel*, 198 Iowa 859.

The evidence to establish the alleged resulting trust consists in the testimony of the plaintiff and of John W. Irving, and a written contract between plaintiff and John W. Irving, as first parties, and a bank, as second party, and a note for $1,800 to the bank, signed by John W. Irving and plaintiff. By this contract the bank agreed to procure a loan on other land for $1,800; and, should the first parties purchase the undivided two tenths of the land in controversy, the bank agreed to procure a loan of $7,000 upon that land. Plaintiff testified that this other land was her brother's, and also, inferentially, that it belonged to her. It was admitted that "the mortgage called for by that contract was never executed." John W. Irving testified that that land was plaintiff's. Plaintiff testified that she had some money in the bank, and borrowed more to pay for the two-tenths interests. John testified that "we" bought out the owners of the two-tenths interests; that, "to some extent," he was acting as agent for plaintiff; that he arranged with the bank about getting the money, "just asked for the money to pay off her share;" that he attended to paying off the note at the bank, and that he paid it "from money that I obtained from the farm, and other money,— I do not remember,—I suppose possibly from the sale of rent notes. * * * It was paid out of her funds and her share of the proceeds out of the farm, and proceeds out of the 80 below." Plaintiff says that the deed was made to John because "he seemed to be doing more business than I, and they thought it was well that he should get the deed." John says that he does not "recall exactly what was said" between him and plaintiff about putting his name in the deed,—"probably that Mr. Cox would take care of it in the deeds; that he was to draw them, and the other boys were to sign;" that he supposed that his name was left in the deed to facilitate his getting the loan. As has been said, however, they were both owners of the legal title to undivided interests in the land. The testimony was given in form such as the following:

"Q. Now, in case you were to have the three-fifths title, as shown by the record, would you or would you not have been indebted to your sister upon such a share? (Same objection.) A. Yes, sir, I would. Q. In other words, upon the purchase of this property, you would be owing her how much? (Same objection.) A. $1,800."

Five witnesses testified, without contradiction, that the reputation of John W. Irving for truth and veracity was bad. The testimony to sustain plaintiff's claim consists mostly, if not altogether, of conclusions, properly objected to. It did not furnish facts which defendants were called upon to meet by opposing evidence, or which they could be expected to meet. The legal title may not be overturned by such contradictory evidence and by mere conclusions, especially when the testimony is given by an impeached witness.—*Affirmed.*

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.