ETHYL MARY COPELAND et al., Appellants, v. DALLAS A. VOGE et al., Appellees.

No. 46684.

OCTOBER 16, 1945.

REHEARING DENIED DECEMBER 12, 1945.

R. L. Sifford, of Carroll, and Bennett Cullison, of Harlan, for appellants.

John J. Hess, of Council Bluffs, and Harold E. Hanson, of Logan, for appellees.

SMITH, J.— Plaintiffs and defendants are children of the same mother, plaintiffs being the issue of her marriage to Leonard L. Lawson, who died intestate June 19, 1894, and defendants the issue of her later marriage (in February 1897) to August N. Voge, who died intestate October 25, 1940. Lottie Lawson Voge, the mother, died intestate in 1934.

The land involved consists of one hundred sixty acres acquired by Leonard L. Lawson in 1887, subject to a $2,000 mortgage which he assumed. This mortgage and two later ones placed on the land by him, the three aggregating $4,000, were unsatisfied when he died. At that time there was pending against him and another an action on an unsecured claim, which later went to judgment against his administrator in the sum of $1,994.27, which judgment in still later proceedings was decreed to be a lien on the one hundred ten acres hereinafter referred to. The case was appealed and affirmed. An execution, issued September 30, 1897, was returned unsatisfied in the sum of $2,809.82. The judgment was assigned to Thomas H. Smith. The nonexempt personal estate of Leonard L. Lawson was negligible in value and insufficient to pay debts and expenses of administration.

Plaintiffs were minors when their father died but the youngest attained her majority in 1913. Their mother, by prompt and appropriate action, had her dower admeasured (December 1894) and fifty acres, including homestead, were set off to her. The remaining one hundred ten acres were sold by the administrator, under order of court, April 22, 1898, to Thomas H. Smith, the then holder of the judgment above mentioned, "subject to all liens and taxes and sale under foreclosure."

Shortly prior to that administrator's sale (March 12, 1898) all the land was sold under foreclosure of the $500 third mortgage, subject, of course, to the first and second mortgages that also covered all the land and were then in process of foreclosure. The sale was made in three offers: one parcel, the one hundred ten acres, sold for $141.85; another, the forty-acre homestead, for $600; and the third, the remaining ten acres of the fifty acres that had been set off as dower, sold for $100. The sale was to one Fred Albertus, to whom the three certificates of purchase issued. He later assigned them to August N. Voge.

The foreclosure of the first and second mortgages went to judgment March 23, 1898, in the sum of $3,432.30, and the judgment was decreed to be a lien upon the entire one hundred sixty acres. This judgment was thereafter assigned to said

Fred Albertus and released March 31, 1899. The one-hundred-ten-acre tract belonged to Thomas H. Smith (after administrator's sale to him April 22, 1898) and as to it he then had the sole right to redeem from the March 12, 1898, foreclosure sale. So far as the record shows, plaintiffs' mother at all times had the sole right to redeem the fifty acres. But had she redeemed, the land would still have been subject to the $3,432.30 foreclosure judgment.

As a matter of fact, no redemption was made. Sheriff's deed issued to August N. Voge March 16, 1899, but was acknowledged March 27, 1899. Before that (on March 13th) Thomas H. Smith executed a special warranty deed of the one hundred ten acres to Lottie L. Voge for a named consideration of $3,795, just as the period of redemption expired. On March 24, 1899, she quitclaimed the entire one hundred sixty acres to her husband, August N. Voge, for a stated consideration of one dollar. These three deeds (the sheriff's deed, the deed from Smith to Mrs. Voge, and the one from her to her husband) were all recorded March 27, 1899; and on the same day were also recorded two mortgages by August N. Voge and wife, one for $3,500 and the other for $500. They were both executed under date of March 24, 1899. The larger one was released March 17, 1914; the other March 20, 1903. The notes secured by these mortgages were signed by August N. Voge alone. A new mortgage for $1,500 was given by him March 5, 1914, and released of record March 1, 1918.

At the end of the year in which plaintiffs' father died the family moved off the farm, but about a year after the mother's marriage to Voge they moved back. Voge thereafter operated the farm and lived there till he died. He held title of record continuously from March 27, 1899. One plaintiff testified she did not learn until her stepfather's death that she was not to receive her share of the farm. She did not say what interest she thought she owned. The other plaintiffs did not testify on that point.

The foregoing history is entirely uncontradicted in the record and seems necessary to be recited in order that proper background may appear for an intelligent decision of the

questions presented. It is proper to add that in all the various legal proceedings, these plaintiffs were properly made parties and represented by guardians ad litem and no question is raised in that respect.

Plaintiffs in their amendment to petition claim ownership of the entire one-hundred-ten-acre tract and claim that, together with defendants, they are co-owners of an undivided one-third interest in the fifty-acre tract. On appeal they advance three propositions:

1. That the possession of "appellants' property" (presumably the one hundred ten acres) by August N. Voge and his wife, "commencing on March 1, 1897," was wrongful and they should be treated as constructive guardians de son tort, and the subsequent acquisition of title by either of them is presumed to have been for appellants' benefit.

2. The acquisition by Voge of title to his wife's separate property (the fifty acres) created a presumption that he held it for her use and benefit and such presumption can be overcome only by proof that a gift from her was intended and the burden of such proof is on those asserting it.

3. That appellants are entitled to an undivided one third in all the property as heirs of their mother.

Appellees first moved to dismiss appellants' petition on the ground of the statute of limitations and laches. The motion being overruled they answered, urging the same grounds in addition to a general denial, and affirmatively alleged substantially the facts we have set out above. By amendment to answer they further alleged that the claim of appellants was stale. No reply was filed but no point is made on appeal as to that.

Two possible questions are presented to us: 1. Did August N. Voge, under the record, hold title to the property (or any part of it) in a trust capacity? 2. Are appellants precluded by the statute of limitations or by their own laches from asserting title to any part of the property?

The trial court found appellants were guilty of laches "in not bringing their action within the period required * * * by the laws of the state of Iowa," that they had

failed to sustain the allegations of their petition, and that the equities were with appellees.

I. The court was asked here to establish what would in effect be a constructive trust in one hundred ten acres, and a resulting trust in the remaining fifty acres, arising out of transactions in and prior to the year 1899, while appellants were minors. As to the one hundred ten acres which belonged to them, after dower was assigned to their mother, the claim is based upon the proposition that the stepfather, Voge, entered into wrongful possession when the family moved back to the farm; that thereby a sort of constructive guardianship or trusteeship arose; and that Voge's subsequent acquisition of title was therefore in trust for appellants' benefit.

We have no quarrel with the abstract proposition of law advanced but question its applicability here. Appellants start with an assumption that the original possession was wrongful. From that premise they conclude that the trust relationship arose and the subsequent acquisition of title by the trustee (Voge) would be presumed to be for their benefit. However, the burden was on appellants to establish that premise by evidence that was "clear, definite, unequivocal and satisfactory." 65 C. J. 493 et seq., section 237. "An implied or constructive trust may be established only on clear, convincing, and satisfactory evidence." McMains v. Tullis, 213 Iowa 1360, 1366, 241 N. W. 472, 474. See, also, New York L. Ins. Co. v. Clemens, 230 Iowa 279, 289, 297 N. W. 253. The proposition is too well settled to require extensive citations.

Have appellants shown wrongful possession? The record does not show the exact date the family moved back to the farm after the marriage of appellants' mother to Mr. Voge. The testimony of Mrs. Copeland, an appellant, indicates it was early in 1898. When the widow's dower was admeasured appellants became the owners of the one hundred ten acres. But this acreage was sold by the administrator April 22, 1898; whether before or after the family moved back is not clearly shown. The administrator's sale, of course, terminated appellants' ownership. We cannot, under the record, say that Mr. Voge ever had possession while appellants still held title. It is not shown whether he paid any rent to anyone for the

year of possession before he acquired full title, nor is it shown what, or with whom, any arrangements were made. These were matters for appellants to show in support of their claim that their property was wrongfully possessed.

Furthermore, the record indicates that appellants' interest prior to the administrator's sale had no substantial value. It was subject to its pro rata share of mortgage indebtedness and the equity in it sold in the administration proceedings for $400, much less than enough to pay the judgment lien against it. It had already been sold under the foreclosure of the third mortgage (subject to the first- and second-mortgage liens) for $141.85. Sheriff's deed issued to Voge, who had acquired from Albertus the sheriff's certificate of sale.

This sheriff's deed, of course, cut off the equity of redemption held first by appellants and later by Smith, the holder of the administrator's deed. However, at about that same time Smith executed a special warranty deed of the entire one hundred sixty acres to Mrs. Voge for the stated consideration of $3,795 and she quitclaimed to her husband for a nominal consideration.

Thus Voge acquired title to the one hundred ten acres by sheriff's deed, confirmed by mesne conveyance from Smith through Mrs. Voge. We cannot say that he acted in fraud of appellants' rights or that any trust relationship arose upon which to base a claim that he held title for appellants' benefit. The facts shown would not justify such a decision by us.

II. Appellants' claim as to the fifty-acre dower tract is somewhat different. When Mr. Voge acquired title to all the land (including the fifty acres) by sheriff's deed he also received from his wife the quitclaim deed heretofore referred to which covered all the land, including the fifty acres.

Appellants' claim is that because this quitclaim deed recited a one-dollar consideration the presumption is that grantee took it in trust only, unless appellees show that it was intended as a gift.

But Mrs. Voge's title was about to be extinguished by the . sheriff's deed. It would have required something over $600 to redeem from the sale already held. And her equity

of redemption was furthermore subject to its pro rata share of the foreclosure judgment of $3,432.30 on the first and second mortgages. See In re Estate of Caylor, 208 Iowa 1208, 1214, 227 N. W. 103. The only clue we have as to the value of the fifty acres is an appraisement of the entire one hundred sixty acres in the administration proceedings for $4,800. The fifty acres was theoretically worth one third of this amount. What part of the lien indebtedness would have been allocated to the fifty acres is problematical, but probably one third. There were doubtless costs and accrued interest on the judgment. In short, Mrs. Voge's interest in this part of the farm was apparently about to be, if not already, lost. She conveyed title to her husband, who was about to receive the sheriff's deed. What he paid Albertus for the sheriff's certificates and for the release of the $3,432.30 foreclosure judgment is not shown. The lack of consideration in her deed to him, however, is satisfactorily explained by the circumstances, without resort to the theory of resulting trust.

Mr. Voge, it is true, eventually acquired the entire farm. But in doing it he borrowed and gave his individual notes for $4,000 secured by mortgage on the land. The last mortgage for that indebtedness was not released until 1918.

We are in no position now, on this record, accurately to appraise the situation as it existed in the spring of 1899. But here again the burden was upon appellants to establish the existence of the claimed trust by clear, satisfactory evidence. Keshlear v. Banner, 225 Iowa 471, 280 N. W. 631; Noel v. Noel, 1 (Clarke) Iowa 423; Murphy v. Hanscome, 76 Iowa 192, 40 N. W. 717; Thompson v. Ohl, 187 Iowa 654, 174 N. W. 446. This burden they have failed to sustain.

III. Appellees have pleaded the statute of limitations and laches and that appellants' asserted claim is stale and should in good conscience be denied. Appellants were all of full age by the year 1913. The suit was started in 1941, more than forty years after the transactions relied on and nearly thirty years after they attained their majority.

The attitude of equity toward stale demands is well expressed in Wokoun v. Jameson, 183 Iowa 956, 966, 167 N. W. 676, 680, quoting from 10 R. C. L. 395, section 142:

"It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. * * * Its object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can be no longer a safe determination of the controversy."

The multiplicity of cases in which the equitable doctrine is discussed discourages any attempt at exhaustive citation. It has been said:

"But a court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court." Brown v. County of Buena Vista, 95 U. S. 157, 160, 24 L. Ed. 422, citing Sullivan v. Portland & Kennebec R. Co., 94 U. S. 806, 24 L. Ed. 324.

In 21 C. J. 210, section 211, it is said:

"More specifically, it [laches] is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another. While there are elements in common, laches is to be distinguished from technical estoppel, and from statutory limitations."

See, also, the text in 30 C. J. S. 520 et seq., section 112. The instant case well illustrates the wisdom of the equitable

rule. The actors in the original drama are dead. We can only surmise the source and purpose of the $3,795 named as consideration in the deed of the one hundred ten acres from Thomas H. Smith to Lottie L. Voge, but on the day that deed was filed, together with the quitclaim deed from Lottie to August N. Voge, the latter on his own notes borrowed $4,000 and she did not sign the notes. It is a fair inference to be indulged after forty years that the $4,000 loan was the source of what was paid to Smith and to Albertus, who assigned the sheriff's certificates and canceled the $3,432.30 judgment.

These and other facts necessary to a just decision of the case are now, after all these years, indeterminable. We have no basis upon which to found a decision that August N. Voge's possession and operation of the farm was in trust for appellants' or for their mother's benefit.

We have examined the authorities cited by appellants in written brief and oral argument. They do not run counter to our decision under this record. Each case must rest on its own facts.

We cannot assume that appellants were ignorant of the situation during the years after 1913 and until they commenced this suit. They must be charged with knowledge that the farm stood in the name of the stepfather and that he was operating it as his own. There was no concealment, no fraud. There is no suggestion that they ever received or demanded any part of the proceeds of operation, or in any manner asserted their claimed interest in the property. We cannot allow them to assert it now.

What we have said indicates that the decision of the trial court must be affirmed and it is so ordered.—Affirmed.

MILLER, C. J., and OLIVER, BLISS, GARFIELD, WENNERSTRUM, MANTZ, and MULRONEY, JJ., concur.

HALE, J., not sitting.