**In re HEALTH CARE PRODUCTS, INC., Debtor.**

**Larry S. HYMAN, Trustee, Plaintiff/Appellee,**

v.

**IOWA STATE BANK, Defendant,**

**and**

**State of Iowa, Defendant/Appellant.**

**No. 92–1898–CIV–T–17(C).**

United States District Court, M.D. Florida, Tampa Division.

Sept. 24, 1993.

Anita Shodeen, Law Office of Anita Shodeen, Des Moines, IA and Daniel Mark Coton, Trinkle, Redman, Moody & Swanson, P.A., Plant City, FL, for defendants-appellants.

Dennis Jay LeVine, Cramer, Haber, McDonald & LeVine, P.A., Tampa, FL, for plaintiff-appellee.

### ORDER ON APPEAL

KOVACHEVICH, District Judge.

The Bankruptcy Court entered judgment in this adversary proceeding in favor of Appellee/Debtor. Chief Bankruptcy Judge Alexander L. Paskay entered Final Judgment on October 29, 1992 granting Appellee's motion for summary judgment and denying Appellant's same motion. The Appellee filed a timely appeal of that judgment.

### STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. Bankruptcy Rule 8013; *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990). However, the Bankruptcy Court's conclusions of law are reviewed *de novo. Id.; In re Owens*, 86 B.R. 691 (M.D.Fla.1988).

### BACKGROUND

The undisputed facts, as provided by the Bankruptcy Court, are as follows. Health Care Products, Inc. (Appellee/Debtor) was a Florida Corporation engaged in the sale of "Cal Ban 3000," which Debtor promoted as a miracle diet pill that caused people to lose weight without dieting. In August of 1988, the State of Iowa (State) filed suit against the Debtor in the Iowa District Court for Polk County, alleging that the Debtor and its stockholders were engaged in a fraudulent and deceptive marketing scheme to sell Cal Ban 3000. The State also alleged that Cal Ban was not safe or effective and that the Debtor was selling an unapproved new drug in violation of the Iowa Food and Drug Act.

The Debtor and the State subsequently entered into a settlement agreement, and on February 23, 1990, the Iowa State Court entered a Consent Decree which incorporated the terms of the settlement agreement and provided for an injunction and restitution order against the Defendant and its shareholders. Restitution was to be allocated between "identifiable" Iowa consumers of Cal Ban 3000 (consumers who purchased Cal Ban in 1989 for whom the Debtor had a customer list containing the consumer's name and address) and "unidentifiable" consumers of Cal Ban 3000 (individuals who purchased Cal Ban in 1987 and 1988 but who could not be identified because the Debtor had destroyed its customer list for some or all of these consumers). Pursuant to the Consent Decree, full refunds were to be made to all identifiable Iowa consumers who returned a postcard indicating that they were dissatisfied with Cal Ban. As to the unidentifiable consumers, the Debtor would be required to disgorge a certain amount of profits to the State to be donated to charity and to the Iowa Consumer Education Fund.

The Consent Decree further provided for creation of a "Segregated Account" under the Court's supervision for "purposes of ensuring payment of 1987 and 1988 restitu-

tion amounts" required by the Consent Decree. Because the parties were uncertain of the total refunds to be made to identifiable consumers, the Consent Decree also provided that the Debtor would be entitled to any excess funds in the account after payment to identifiable consumers and the State. In accordance with the Decree, the State and Debtor opened two money market savings accounts at Iowa State Bank ("Bank"), the other named Defendant in this adversary proceeding. Pursuant to the terms of the Consent Decree, although the accounts are in the Debtor's name only, money could only be withdrawn from the accounts with the signatures of the Iowa Assistant Attorney General and the Debtor's attorney, or by further court order.

The State subsequently mailed refund notices to Iowa consumers of Cal Ban 3000 as provided by the Consent Decree. On July 2, 1990, the State sent notice to the Debtor's attorney indicating that according to the formula set forth in the Consent Decree, the total amount owed to the State for the unidentifiable Cal Ban consumers was $193,605.82. Additionally, pursuant to the Consent Decree, the Debtor was to mail refund checks totally $55,701.09 to identifiable Cal Ban consumers on or before September 1, 1990. The Debtor failed to send out refund checks or disburse money to the State by this deadline. Instead, the Debtor sought a stay of the terms of the Consent Decree and also sought an order vacating the Consent Decree.

On September 21, 1990, the Iowa State Court granted a temporary stay of the terms of the Consent Decree until it could hear further evidence. However, at the State's request, the court conditioned the stay on the Debtor's depositing additional money in the accounts on or before September 25, 1990, to ensure that sufficient funds were in the account to cover all of the Debtor's obligations under the Consent Decree, including payment to identifiable Iowa consumers of Cal Ban 3000 and to the State on behalf of unidentifiable consumers. The Iowa State Court ultimately denied the relief sought by the Debtor and ordered the Debtor to make full refunds to eligible consumers no later than 30 days from March 29, 1991. The Debtor then filed a Motion for Reconsideration, which was denied.

On August 26, 1991, the Debtor filed its voluntary petition under Chapter 7 of the Bankruptcy Code. The Trustee then filed this action against the State and Iowa State Bank seeking a determination that the funds in the accounts were property of the estate pursuant to 11 U.S.C. § 542. It should be noted that Iowa State Bank claims no interest in the accounts and has agreed to disburse the funds in the accounts pursuant to court order.

## ANALYSIS

### A. Jurisdiction.

█ The State contends that because the Debtor's action was against the State of Iowa, the Eleventh Amendment's sovereign immunity barred the Bankruptcy Court from hearing this case and prohibits review of this matter by this Court. The Eleventh Amendment provides, in pertinent part, that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...." The thrust of this Amendment is to provide the federal government and the states with immunity from suit unless such immunity is waived. *Cunningham v. Macon and Brunswick Railroad Co.*, 109 U.S. 446, 451, 3 S.Ct. 292, 296, 27 L.Ed. 992 (1883). Although Appellant concedes that certain provisions of the bankruptcy code provide for waiver of a state's Eleventh Amendment sovereign immunity, it argues that none of the waiver provisions apply to this case.

Section 106 of the Bankruptcy Code addresses waiver of sovereign immunity by "governmental units" in bankruptcy actions. The Code defines the term "governmental units" to include, inter alia, states. 11 U.S.C. § 101(26). Section 106(c) of the Bankruptcy Code provides that:

Except as provided in subsections (a) and (b) of this section, and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Section 106(c) applies to this case because the Debtor's complaint is based, in part, upon § 542(a) of the Bankruptcy Code, which requires an "entity" that is holding property of the estate on the date of filing the bankruptcy petition to deliver that property to the trustee. In the case at hand, the State of Iowa constitutes the relevant "entity," and seeks to bar the debtor's action through sovereign immunity.

The Supreme Court recently examined the issue of whether § 106(c) abrogated the states' constitutional right of sovereign immunity in bankruptcy actions. In *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the Court held that § 106(c) did not authorize monetary recovery from the States. In so holding, the Court reasoned that "in enacting § 106(c) Congress did not abrogate the Eleventh Amendment immunity of the States," because Congress did not make its intention to do so unmistakably clear in the verbiage of the statute. *Id.* at 104, 109 S.Ct. at 2823. In dicta, the court found the verbiage of § 106(c)(2) to be more indicative of declaratory and injunctive relief than monetary relief.

Although *Hoffman* contains broad language that could be construed to find no authority under § 106(c) to abrogate a state's sovereign immunity in cases seeking only declaratory or injunctive relief, the Court's subsequent decision in *United States v. Nordic Village, Inc.*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), limits the holding in *Hoffman* to prevent such a broad construction. In *Nordic Village*, the Court noted that its prior decision in *Hoffman* examined only

the narrow issue of whether "§ 106(c) authorizes a monetary recovery against a State." *Id.* —— U.S. at ——, 112 S.Ct. at 1014. Writing for the majority in *Nordic Village*, Justice Scalia explained that § 106(c) "waives sovereign immunity, [although] it fails to establish unambiguously that the waiver extends to monetary claims." *Id.* —— U.S. at ——, at 1015. Thus, the Court concluded that § 106(c) authorized bankruptcy courts to impose declaratory and injunctive relief, though not monetary relief, against governmental entities. *Id.*

■ Although Debtor's relief in this case included turnover of funds claimed by the State of Iowa, this action specifically sought declaratory relief of the sort envisioned by the Supreme Court in *Nordic Village*. An equitable action may include, as a form of relief, the recovery of specific monies. *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In this case, Debtor did not seek monetary recovery from the State of Iowa; it merely sought a court decision as to whether the funds in the subject money market account constituted property of the estate under the Bankruptcy Code. The final judgment of the Bankruptcy Court found the accounts constituted property of the estate and thus required the defendant Bank, and not the State of Iowa, to turn over funds to the Debtor. Accordingly, this Court rejects the Appellant's contention that this action was barred by the Eleventh Amendment.

### B. Property of the Estate.

In its October 29, 1993, Order on Motions for Summary Judgment, the Bankruptcy Court found "no question that the money market savings accounts are titled in the name of the Debtor, that the debtor was the source of the funds in the accounts, and that no escrow was ever created." As such, even though the Consent Decree required the Debtor to disburse the funds only under the State's supervision, the Bankruptcy Court concluded that the accounts remained property of the Debtor

and consequently, property of the estate. This record provides no evidence to the contrary.

Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the estate." Legislative history clearly denotes the broad scope of the estate, but also indicates that it was not meant to extend the debtor's rights beyond those in effect as of the date of filing. S.Rep.No. 95–989, 95th Cong., 2d Sess.; H.R.Rep. No. 95–595, 95th Cong., 2d Sess., *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787, 5868, 6323. The State correctly points out that the broad definition of property of the estate found in § 541(a)(1) is limited by § 541(d), which provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a) only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The State argues that the Consent Decree entered into by Debtor and the State stripped Debtor of all equitable interest in the subject accounts and that therefore, because Debtor held only bare legal title to the accounts on the date of filing, the estate also took only bare legal title without any equitable interest in the accounts.

■ Since the Bankruptcy Code contains no provisions for ascertaining a Debtor's legal interest in particular property, our inquiry must look first to Iowa property law to determine the nature and extent of the Debtor's interest in the subject accounts. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The Iowa District Court's Consent Decree required Debtor to open the "Segregated Accounts" at an Iowa bank to assure payment of restitution amounts to Iowa consumers unsatisfied with Debtor's products. The Consent Decree further provided that no funds could be withdrawn from the accounts without the consent of both Debtor and the State, or until a further court order stated otherwise.

■ Although the State argues that the Consent Decree transferred equitable ownership in the Segregated Accounts to the State, it provides no authority for this assertion. The Iowa Supreme Court has determined that a Consent Decree effectively constitutes "a contract of record made by the parties and approved by the court, and it is not a judicial determination of any litigated right." *World Teacher Seminar, Inc. v. Iowa District Court for Jefferson County,* 406 N.W.2d 173, 176 (Iowa 1987). Indeed, the Consent Decree declared that "this settlement shall be considered merely as a compromise of a disputed claim." Decree at 2. Thus, the Iowa state court could not have transferred ownership of the accounts from Debtor to the State through the Consent Decree unless the parties involved so intended, and it does not appear that the Decree intended such a result. As noted by the Bankruptcy Court below, the Segregated Accounts established by the Consent Decree were titled in Debtor's name, and, absent further court order, funds could not be withdrawn from the accounts without Debtor's authorization.

Although state law determines the Debtor's interest in the account, the Supreme Court case of *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) provides guidance in this matter. In *Whiting Pools,* the Court held that the estate included property of the debtor that was seized by the Internal Revenue Service ("IRS") prior to the debtor's filing a Chapter 11 petition for reorganization. *Id.* at 209, 103 S.Ct. at 2513. The Court's reasoning was twofold. First, the Court noted that the Bankruptcy Code provided no special exclusion for the IRS to exclude from the bankruptcy estate property seized to satisfy a tax lien. *Id.* Second, the Court explained that, pursuant to the IRS Code, ownership of Debtor's property did not transfer to the IRS until it could be sold at a tax sale. *Id.* at 211, 103 S.Ct. at 2316. Instead, the IRS's interest in the seized property only constituted only a lien.

The Eleventh Circuit's recent decision in *In re Challenge Air International, Inc.*, 952 F.2d 384 (11th Cir.1992) expanded the holding in *Whiting Pools*, which dealt only with tangible personal property, to accounts. In *Challenge Air*, the court found accounts held by a third party which were subject to an IRS levy remained property of the estate. The *Challenge Air* court held that the pre-petition levy by the IRS did not extinguish the debtor's rights in the funds.

Following the reasoning of *Whiting Pools* and *Challenge Air*, the critical determination is whether any pre-petition actions transferred ownership in the subject accounts from Debtor to the State. Although the Consent Decree clearly vested the State with some interest in the subject accounts, the Decree did not transfer ownership from Debtor to the State. The monies in the subject accounts were derived from Debtor, the accounts were titled in Debtor's name, and absent court order, any withdrawal from the accounts required Debtor's authorization. Had the state court desired the Segregated Accounts to be property of the State, the Consent Decree could easily have required immediate turnover of funds to the State in lieu of creation of the Segregated Accounts.

The State next argues that the Segregated Accounts created by the Consent Decree were, in effect, escrow accounts. As support, the State notes that the Iowa state court repeatedly referred to the accounts as an escrow accounts in its orders. But mere reference by the state court to an "escrow account" in a court order subsequent to execution of the consent decree does not establish that the parties intended to create an escrow under the terms of the Consent Decree. Furthermore, the Consent Decree never discussed creation of an escrow account.

■ An escrow is commonly defined as a written agreement whereby an obligor deposits a specified sum of money with a person, who is not a party to the instrument, to be kept by the depository until the performance of a condition by an obligee and then to be delivered to the obligee. 30A C.J.S. *Escrows*, § 2; 28 Am.Jur.2d *Es-*

*crow*, § 3; *Love v. Brown Development Co. of Michigan*, 100 Fla. 1373, 131 So. 144 (1930). The Segregated Account required by the Consent Decree was not ordered to be held by a third party depository; the accounts were titled only in Debtor's name. Had the state court desired to create an escrow, it could have easily done so through the Consent Decree. Instead, the Consent Decree required only that the Debtor establish a Segregated Account, which could not be drawn upon without consent of both Debtor and the State, or alternatively, by court order. Therefore, this Court finds that the Segregated Accounts did not constitute escrow accounts.

■ Reasoning that Debtor's wrongful withholding of funds should not entitle Debtor to retain ownership of the accounts, the State asserts that the accounts were subject to a constructive trust in its favor due to the Debtor's failure to follow orders of the Iowa District Court. Property which is subject to a constructive trust is not included in the bankruptcy estate. *In re Teltronics, Ltd.*, 649 F.2d 1236 (7th Cir. 1981). The Iowa Supreme Court adopted the definition for a constructive trust from 89 C.J.S. Trusts, § 138, where it is defined as "a remedial device by which the holder of legal title is held to be a trustee for the benefit for another who in good conscience is entitled to the beneficial interest" *Loschen v. Clark*, 256 Iowa 413, 127 N.W.2d 600 (1964). Under Iowa law, a constructive trust is an appropriate remedy against unjust enrichment, and may be based upon equitable principles other than fraud. *Copeland v. Voge*, 237 Iowa 102, 107, 20 N.W.2d 2, 5 (1945); *Loschen, supra,* 127 N.W.2d at 603. The party seeking to impose a constructive trust must establish its elements "by clear, convincing, and satisfactory evidence." *Slocum v. Hammond*, 346 N.W.2d 485, 493 (Iowa 1984) (citing *Copeland, supra,* 20 N.W.2d at 5).

■ Despite the State's assertions that Debtor wrongfully defied court orders by failing to turn over funds from the Segregated Accounts, the record provides no evidence of such improper conduct. The Con-

339

sent Decree contained no findings of fraud or wrongdoing on Debtor's part and Debtor deposited funds in the Segregated Accounts as required by the Consent Decree. The record contains no contempt order issued from the Iowa state court for Debtor's wrongful withholding of monies. Had the Debtor committed the egregious conduct alleged by the State, then the State would have possessed, as an available remedy, the power to move for appropriate sanctions. But in spite of the State's allegations, it never even sought a contempt order against Debtor. Moreover, as explained by the Bankruptcy Court, permitting the estate to retain the funds will not result in any unjust enrichment because the funds will be disbursed to all of Debtor's creditors, including the Iowa consumers who have filed claims against Debtor.

Finally, the State maintains that the Bankruptcy Court erred in striking its affirmative defenses to Debtor's turnover action. This Court finds this argument meritless since the Bankruptcy Court considered the State's defenses in making its determination to grant Debtor's motion for summary judgment.

Based upon the foregoing, this Court finds sufficient evidence to support the determination of the Bankruptcy Court that the accounts remained Debtor's property throughout this action and thus constitute property of the estate. This Court also finds that no escrow was created and no constructive trust should be imposed upon the Segregated Accounts. Accordingly, it is

**ORDERED** that the judgment of the Bankruptcy Court granting summary judgment in favor of Debtor be AFFIRMED.

**DONE AND ORDERED.**